DAVIS ENTERPRISES, A PARTNERSHIP, PLAINTIFF-RESPON-
DENT, v. RICHARD KARPF, DEFENDANT-APPELLANT, AND
JACK KARPF AND PLANNING BOARD OF THE TOWNSHIP
OF CHERRY HILL, DEFENDANTS.

Argued September 23, 1986—Decided March 31, 1987.

*Michael N. Kouvatas* argued the cause for appellant (*Michael Kouvatas*, attorney; *Richard C. Borton*, on the brief).

*Gerald E. Haughey* argued the cause for respondent (*Brandt, Haughey, Penberthy, Lewis & Hyland*, attorneys).

The opinion of the Court was delivered by

POLLOCK, Justice.

This appeal presents the question whether a "hardship" variance sought pursuant to *N.J.S.A.* 40:55D–70(c) must be denied because an adjoining property owner offers to purchase the property at fair market value. Defendant, Planning Board of the Township of Cherry Hill (the Board), determined that the offer did not compel the denial of the variance and that the offer was one factor, among others, to be considered in determining whether to grant a variance to defendants Richard and Jack Karpf, who were purchasers under contract. The Law Division ruled, however, that the variance would be defeated if the adjoining property owner, plaintiff, Davis Enterprises (Davis), offered to purchase the property for a price equal to that offered by the Karpfs. In an unreported opinion, the Appellate Division affirmed. We granted certification, 103 *N.J.* 479 (1986), and now reverse the judgment of the Appellate Division.

–I–

In 1939, Mrs. Schallenhammer and her late husband purchased the subject property, which included the existing house and garage. At no time did Mrs. Schallenhammer, who conveyed the property to the Karpfs during the pendency of the appeal to this Court, increase or decrease the size of the lot. Initially, the Schallenhammers operated a tap room in the house until they lost their liquor license during World War II because,

according to Mrs. Schallenhammer, her husband was not an American citizen. Thereafter, until 1973, they conducted an upholstery business in the house, following which their son operated a tool and dye shop in the garage until 1975. Throughout the entire time of her ownership, Mrs. Schallenhammer used the house as her residence.

The property in question is rectangular in shape and abuts a traffic circle at the intersection of Coles Avenue and Route 38 in Cherry Hill. It is located in a highway business (B–2) zone, and is bordered on two sides by property owned by Davis. The property is surrounded by an office and business complex, a gas station, a bank, a fire hall, and a diner. Jack Karpf, a lawyer, and his brother Richard, a commercial realtor, proposed to use the house as a small real estate and law office, a use that is permitted in the B–2 zone.

Although the proposed use is permitted, the lot is undersized and the location of the house on it is such that the Karpfs applied to the Board, pursuant to *N.J.S.A.* 40:55D–60(a), for site plan approval and for certain variances:

| SECTION | SUBJECT | ORDINANCE REQUIREMENT | VARIANCE REQUESTED |
|---------|---------|------------------------|---------------------|
| 1803 | Lot size | 20,000 sq. ft. | 6,571 sq. ft. |
| 1803 | Frontage | 120' | 45.87' |
| 1803 | Front setback | 30' | 14' |
| 1803 | Side setback | 10' | 2' |
| 1803 | Side aggregate | 20' | 12.8' |
| 2401.12 | Driveway width | 25' | 10.8' |
| 2403.20 | Parking spaces | 19 | 6 |
| 1810 | Open space | 25% | 13%. |

The Board proceedings are colored by animosity between Davis and Mrs. Schallenhammer, apparently because Davis tried to thwart her efforts to sell the property. A proposed sale in 1982 to Philip Kogan for $50,000, which was conditioned

upon obtaining certain variances, collapsed in the face of opposition by Davis. An offer for $60,000 from another purchaser was withdrawn, apparently because of the prospect of litigation with Davis. In 1982, after the Kogan sale fell through, Mrs. Schallenhammer rejected offers from Davis for $15,000 and then $30,000. Davis then increased its offer to $40,000, contingent on the removal of the existing structure and the construction of a new 3,000 square foot office building. Although Mrs. Schallenhammer said through a realtor that she would accept $45,000, before Davis responded, she entered into a contract of sale with Richard Karpf for $45,000, which was contingent upon site plan approval and necessary variances. Subsequently, Davis offered her $45,000 without conditions. Davis proposed to raze not only the existing structure but also, on the expiration of a five-year lease, a gas station on a contiguous property. According to Davis, the consolidated lots "would almost equal" the required minimum lot size, and he proposed to construct a yet undesigned building on that lot.

At the conclusion of the hearing, the Board granted site plan approval and the requested variances, finding that the property would be subject to exceptional or undue hardship if the variance were not granted (the "positive criteria") and that the variance would not result in a substantial detriment to the public good or the zoning plan (the "negative criteria"). *N.J. S.A.* 40:55D–70(c). Although the Board considered the Davis offer as a relevant factor, it found that "even while considering this offer the board determines that the applicant has the necessary hardship which allows the granting of the requested variances."

The Law Division sustained the Board's finding as to both criteria, but concluded that the variance should have been granted on the condition that Davis be permitted to purchase the property at his offering price of $45,000, the payment of which would eliminate the hardship to the property. Accordingly, the court imposed a condition upon the grant that the variances were to become null and void if Davis made an

unconditional offer to purchase the property for $45,000 within 30 days.

In affirming, the Appellate Division ruled that "[i]f the property owner refuses to sell at a 'fair and reasonable price,' he would not be considered to have suffered undue hardship." Finding that Davis's unconditional offer of $45,000 was "fair and reasonable," the court declared the variances to be null and void.

–II–

The crux of this case concerns the relationship between the offer of an adjoining owner to purchase the property in question for fair market value and the finding that "the strict application" of the zoning requirements would result in "peculiar and exceptional difficulties to, or exceptional or undue harm upon, the developer of the property." *N.J.S.A.* 40:55D–70(c)(1). In short, does an adjoining owner's offer to purchase prevent a planning board from finding that the positive criteria have been satisfied?

Underlying the request for a hardship variance is the premise that without such relief the property will be zoned into inutility. *See Commons v. Westwood Zoning Bd. of Adjustment,* 81 *N.J.* 597, 607 (1980). In balancing the interests of the property owner, adjacent owners, and the municipality, a board may impose reasonable conditions on the grant of a variance. *Nash v. Board of Adjustment of Morris Township,* 96 *N.J.* 97, 105 (1984); 6 P. Rohan, *Zoning and Land Use Controls* § 43.03(1), at 43–41 (1985). One such condition, described as a conditional variance, "affords the adjoining property owners the opportunity to purchase the property for its fair market value." *Nash v. Board of Adjustment of Morris Township, supra,* 96 *N.J.* at 106; *see also Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach,* 78 *N.J.* 544, 555 (1979) ("[i]t would be consonant with the interests of all parties to deny a variance conditioned on the purchase of the land by adjoining

owners at a fair price"); *Gougeon v. Borough of Stone Harbor,* 52 *N.J.* 212, 224 (1968) (*Gougeon I*) (a party may "in the discretion of the Board be denied the permission to build his house on condition that" an adjoining property owner makes an offer to purchase the land at a fair market price). A conditional variance recognizes that adjacent owners have a heightened interest in the sale and development of adjoining property and that the underlying purpose of zoning is to encourage the development of property in accordance with relevant land use requirements. *See Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra,* 78 *N.J.* at 555–56. Conditioning the grant of a variance on an adjacent owner's offer to purchase prevents the strict application of an ordinance from zoning property into inutility, while avoiding the possible intrusion of substandard lots or structures into a neighborhood. *See id.* at 556.

In its discretion, a board may recognize an offer to purchase the property at fair market value by imposing on the grant of a variance a condition subsequent for the benefit of an adjoining owner. *Nash v. Board of Adjustment of Morris Township, supra,* 96 *N.J.* at 102. Alternatively, such an offer, if not accepted, may be viewed as eliminating the hardship, thereby leading to the denial of the variance. *Id.* at 106; *Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra,* 78 *N.J.* at 555–56; *Gougeon I, supra,* 52 *N.J.* at 224. Which alternative to follow, if either, is a matter that is ultimately committed to the sound discretion of the board. In either event, the offer does not become relevant to the board's decision until the applicant has established that he or she is otherwise entitled to the variance. *See Nash v. Board of Adjustment of Morris Township, supra,* 96 *N.J.* at 109.

Hence, a fair market value offer to purchase the property by an adjoining owner is a relevant, but not dispositive, consideration in determining whether hardship exists. *See Gougeon v. Board of Adjustment of Stone Harbor,* 54 *N.J.*

138, 148–49 (1969) (*Gougeon II*) (an adjoining property owner's fair market value offer by itself does not warrant a denial of grant of variance); *cf. Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra,* 78 *N.J.* at 555 (saleability of land is only another yardstick by which undue hardship is to be measured); 3 R. Anderson, *American Law of Zoning* § 18.54, at 292 (2d ed. 1977) ("[a] land owner has the right to develop his land; he is not required to sell" his non-conforming property just because he received an offer to purchase). Courts in other jurisdictions have also approved hardship variances notwithstanding that the property owner received an offer to purchase from a neighbor. *See, e.g., Marchi v. Town of Scarborough,* 511 *A.*2d 1071, 1073 (Me.1986) ("[t]he fact that the property has a potential for sale to an abutting owner" does not preclude granting of hardship variance); *Macchia v. Board of Appeals,* 7 *Misc.*2d 763, 764, 164 *N.Y.S.*2d 463, 465 (Sup.Ct.1957) (refusal of reasonable offer from adjoining property owner was improper ground for denying application for building permit and variance because an administrative board cannot constitutionally compel a property owner to sell his property); *cf. Kent County Land Co. v. Zoning Bd. of Review,* 10 *R.I.* 418, ——, 216 *A.*2d 511, 513 (1966) (an offer to purchase by an objector does not preclude granting of hardship variance).

■ In determining whether to grant a hardship variance in the face of such an offer, we have stated that we never "intended that existence of such an offer, of itself, would warrant denial of relief. [*Gougeon I, supra,*] 52 *N.J.* at 224. It was intended that such an offer would constitute a circumstance to be considered in the application of the Board's statutory discretion to the whole case." *Gougeon II, supra,* 54 *N.J.* at 148–49. The import of our decisions is that an offer to purchase by an adjacent owner authorizes, but does not require, the denial of a hardship variance. *See, e.g., Commons v. Westwood Zoning Bd. of Adjustment, supra,* 81 *N.J.* at 606–08 ("[e]ndeavors to sell the property to the adjoining landowners, the negotiations between and among the parties, and the rea-

sonableness of the prices demanded and offered are also relevant considerations"); *Harrington Glen, Inc. v. Leonia Bd. of Adjustment,* 52 *N.J.* 22, 30–31 (1968) (willingness of neighbor or interested person to buy at fair price may be considered in determining hardship); *see also Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra,* 78 *N.J.* at 561 (in its discretion, board may consider propriety of variance conditioned on selling property to adjoining property owner). Notwithstanding the offer, a board may still grant the requested relief. *Gougeon II, supra,* 54 *N.J.* at 148–49.

A conditional variance is strong medicine. It subordinates an owner's ability to use his or her property to another's desire to purchase it. *See Nash v. Board of Adjustment of Morris Township, supra,* 96 *N.J.* at 109. Accordingly, we have limited our recognition of conditional variances to vacant residential land that requires a variance before the property is useable. *See, e.g., id.* at 103–05 (an isolated, undersized, vacant lot in a single-family detached residential zone); *Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra,* 78 *N.J.* at 548–50 (a vacant lot in a residential zone); *Gougeon I, supra,* 52 *N.J.* at 216–18 (an undeveloped lot in a residential zone). In those cases, the only alternative to granting an unconditional variance would have been zoning the property into inutility, a result that would be tantamount to taking the property. *See Commons v. Westwood Zoning Bd. of Adjustment, supra,* 81 *N.J.* at 607; *Harrington Glen, Inc. v. Leonia Bd. of Adjustment, supra,* 52 *N.J.* at 33. The conditional variances in those cases would not have deprived the owners of the right to continue to use previously developed properties. To date, we have not recognized a conditional variance when the property is a developed commercial lot. Furthermore, we have never required the owner of a developed lot to sell that property to an adjoining owner when the owner seeks only to construct an addition to an existing dwelling. Requiring a homeowner to sell to an adjoining owner as a condition of the grant of a hardship variance would generally seem to be unwarranted.

Assuming, moreover, that the existing house were to remain in place, forcing the owner to sell to a neighbor who intended to retain the house would not serve any apparent land use purpose.

■ Arguably, it could be better land use regulation to eliminate developed pre-existing sub-standard lots, such as the property in question, that do not conform to current zoning requirements. The proper scope of judicial review, however, is not to suggest a decision that may be better than the one made by the board of adjustment or planning board, but to determine whether the board could reasonably have reached its decision. *Kramer v. Board of Adjustment, Sea Girt,* 45 *N.J.* 268, 285 (1965); *Kessler v. Bowker,* 174 *N.J.Super.* 478, 485 (App.Div. 1979), certif. denied, 85 *N.J.* 99 (1980). Such a decision is presumed valid and should not be set aside unless it is arbitrary, capricious, or unreasonable. *Kessler v. Bowker, supra,* 174 *N.J.Super.* at 486; *accord Kramer v. Board of Adjustment, Sea Girt, supra,* 45 *N.J.* at 285.

–III–

■ In the present case, the Board discussed the effect of Davis's offer to purchase the property and, in the course of the hearing, consulted its attorney, who advised that the offer was a factor that should guide, but not predetermine, the exercise of the Board's discretion. After considering the offer, the Board found that the existing house together with the size and shape of the lot created the hardship necessary to justify the requested variances. In concluding that the grant of the hardship variance would become null and void if Davis met the condition of making a matching offer, the lower courts erred. They should have accorded the presumption of validity that attaches to the decision of a planning board or board of adjustment and, in the absence of a showing that the decision was arbitrary, capricious, or unreasonable, upheld the Board's decision.

Before concluding, we recognize a question exists whether all the requested variances were required. Karpf sought lot size and frontage variances as well as front and side setback, side aggregate, and open space requirements, which result from the location of the existing structure on the lot. No variance was sought to convert the nonconforming residential use to a commercial use. *See Foster-Hyatt Group v. West Caldwell Planning Bd.*, 174 *N.J.Super.* 10, 12 (App.Div.1980) (distinguishing a nonconforming use from a nonconforming lot or structure). The size and configuration of the property as well as the location of the house have not changed since 1939, the date of purchase by Mr. and Mrs. Schallenhammer. Unfortunately, the record does not disclose whether the lot and house antedate relevant zoning regulations. The pre-existence of the house could be important because *N.J.S.A.* 40:55D–68 provides in relevant part: "Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof." Although the statute does not protect pre-existing nonconforming lots, as distinguished from structures, *see N.J.S.A.* 40:55D–5, the zoning ordinance permits such a lot to be used "for any purpose permitted in the zone other than multiple dwellings, provided that all other regulations prescribed for the zone by this Ordinance are complied with." Township of Cherry Hill, N.J., Zoning Ordinance § 510 (1976). Arguably, the statutory protection accorded to a nonconforming structure rendered unnecessary the variances resulting from the location of the dwelling. Similarly, the ordinance might have rendered unnecessary variances from the area and frontage requirements. Although the Karpfs' attorney mentioned at oral argument before us that no variances were required, the necessary record was not developed before the Board or the lower courts. Nor was the issue briefed on appeal. Consequently, we decline to decide the matter on the basis that no variances were required.

*Foster-Hyatt, supra,* 174 *N.J.Super.* 10, does not conflict with that conclusion. There, the Appellate Division affirmed a planning board's denial of bulk variances requested in connection with the proposed conversion of a single-family dwelling located in a commercial zone from a nonconforming residential to a conforming commercial use. As in the present case, some of the bulk variances were requested because of the size and shape of the lot, and others because of the location of the house. The lot adjoined on either side two other sub-standard residential lots. In opposing the application, the municipality emphasized its desire to encourage commercial development that conformed to the requirements of the zoning ordinance. The planning board concluded that the owner had failed to demonstrate that it was unable to purchase other property and that the variances would not impair the zone plan. Stating "[w]e do not sit in judgment on whether the envisioned commercial upgrading of this area is wise or unwise," *id.* at 14, the Appellate Division sustained the board's decision. As indicated, the case proceeded on the assumed need for the variances pertaining to both the lot and the dwelling, and the decision may be viewed as judicial approval of a board decision that was neither arbitrary nor unreasonable.

We need not reach the issue posed by the concurring opinion, whether the Board erred in considering the adjoining owner's offer to sell, evidence of which was admitted without objection. The Board found, notwithstanding the offer, that the property was subject to the hardship necessary to support the grant of the variance. We are satisfied that the Board did not act arbitrarily, capriciously, or unreasonably, and that the findings of the Board are supported by substantial credible evidence.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for the entry of an order affirming the decision of the Board granting the requested variances and the site plan approval.

STEIN, Justice, concurring.

Prior to this case, the conditional variance doctrine recognized in *Gougeon v. Board of Adjustment of Stone Harbor*, 52 *N.J.* 212 (1968) (*Gougeon I*), had not been applied to improved property. Here, both the Law Division and Appellate Division determined that the variances granted by the Cherry Hill Planning Board, allowing an existing structure to be used as an office building, should be invalidated because an abutting owner submitted an unconditional offer to purchase the property for a "fair and reasonable" price. I concur with the majority opinion's holding that the offer did not compel the invalidation of the variances. I write separately because the majority opinion leaves unresolved the question whether evidence of an abutting owner's offer to purchase the property was admissible in the proceedings before the Planning Board. The lower courts held that such evidence was not only relevant but that it was determinative of the variance application. In my view, the Planning Board's consideration of the abutting owner's offer was a misapplication of the conditional variance doctrine that has heretofore been restricted to cases in which the property was vacant, undersized, and unable to be used at all without a variance.

I

The first case suggesting that an unconditional offer to purchase a vacant, undersized lot could defeat an application for a "c"-type variance was *Harrington Glen, Inc. v. Municipal Bd. of Adjustment of Leonia*, 52 *N.J.* 22 (1968). The property in that case was a 40′ × 122′ lot in the Borough's A–2 zone that required a minimum of 80 foot frontage, 8,000 square feet in area, and an aggregate sideyard of 18 feet. The owners agreed to sell the lot to the applicant, conditioned on variances from the frontage, area, and sideyard requirements. The Board of Adjustment denied the variance, and its action was reversed by the Law Division and reinstated by the Appellate

Division. This Court, observing that the resolution of denial included no specific factual findings as to the statutory criteria, remanded the matter to the local board for reconsideration. The Court's opinion referred to decisions holding that

> a municipality cannot constitutionally restrict the use of an owner's land in such manner as to deprive him of all practical use of it. They hold that deprivation of that nature is confiscation, and if the governing body deems such restriction necessary to serve the public interest or the general welfare an obligation to compensate the owner for the loss suffered must be accepted. [*Id.* at 32–33.]

The Court cautioned the Board that "if it finds plaintiffs are not entitled to relief, the ordinance will have zoned their property into idleness." *Id.* at 29. We noted that on remand the Board could consider whether adjacent property could be acquired by the applicant to reduce the extent of nonconformity. *Id.* at 30. Finally, the Court raised the possibility that a fair offer to buy the property could be pertinent to the need for the variance:

> There was some indication at the original hearing that a neighbor on Hillside Avenue, the rear of whose premises adjoins the Pou lot, may be interested in adding the Pou land to his holding. The matter was not pursued. If that neighbor or any other interested person is willing at the time of the renewed hearing to buy Pou's lot at a fair price—for example, at the front-foot value of conforming lots in the general residential area—that fact may be considered on the issue of hardship. [*Id.* at 31.]

The issue in *Gougeon I, supra,* 52 *N.J.* 212, was virtually identical to that in *Harrington Glen.* The property was 30' × 110' and the ordinance required an area of 5,000 square feet and sideyards of at least ten feet. The variance application sought relief from the area and sideyard requirements. Evidence at the hearing included an offer to buy the property for $7,000. The variance was denied.

This Court observed that "[t]he square foot area and sideyard requirements of the ordinance, together with the use restriction to one-family residences, have zoned plaintiff's property into idleness. * * * Thus the hardship seems plain." *Id.* at 220. We then instructed the Board that, on remand, an unconditional offer to purchase the property for fair value could be a basis for denial of the variance on the ground that the offer might alleviate the claimed hardship:

Under the circumstances, if the overall proof at the rehearing satisfies the negative criteria of the statute, the hardship being established, the variance or exception shall be granted, unless a binding offer is made on the record to pay plaintiff the fair market value of his lot, which value cannot be less than $7,000. If the negative criteria are met, but the $7,000 offer is withdrawn or renewed for less than $7,000, the variance or exception shall be granted. To put the matter another way: If the negative criteria are met, plaintiff may in the discretion of the Board be denied the permission to build his house on condition that a binding offer as described above is made and is available for prompt payment to him. If plaintiff refuses such a fair and reasonable offer, the Board may conclude that his case falls short of the exceptional or undue hardship which justifies relief. [*Id.* at 224.] [1]

Similarly, in *Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach*, 78 *N.J.* 544 (1979), the Court reviewed the denial of a variance to allow the owner of a vacant undersized lot to build a house. As in the earlier cases, the Court remanded the matter to the Board of Adjustment for more detailed findings on the record. The Court noted that an offer had been made by a neighbor to buy the land, and suggested that "the salability of the land" was "[a]nother yardstick by which undue hardship is to be measured." *Id.* at 555. Again, the Court emphasized that the Board's task was a "discretionary weighing" of the competing interests of the landowner, neighbors, and the community as a whole. *Id.* at 556. "In weighing and balancing the elements," the Court held, "the board may consider the propriety of a conditional variance to attain a just and reasonable solution." *Id.* at 561.

The same principles were set forth in *Commons v. Westwood Bd. of Adjustment*, 81 *N.J.* 597 (1980). There, the vacant lot had a frontage of 30 feet and an area of 5,190 square feet; the ordinance required a minimum frontage of 75 feet and an area . of 7,500 square feet. The applicant had offered to sell the lot

---

[1]On remand, the Board denied the variance on condition that the intervenors offer to buy the lot for $8,100. The offer was made and rejected. Gougeon sought review of the Board's action and this Court reversed, concluding that although the offer to purchase was a "circumstance to be considered in the application of the Board's statutory discretion," *Gougeon v. Board of Adjustment of Stone Harbor*, 54 *N.J.* 138, 149 (1969) (*Gougeon II*), the Board's denial of the variance nevertheless constituted an abuse of discretion. *Id.*

to a neighbor, but was offered an inadequate price. The Board of Adjustment denied the variance, and its action was affirmed by the Law Division and the Appellate Division. This Court, determining that the record was inadequate and the Board's findings conclusory, remanded the matter for a supplemental hearing, specifically adverting to the relevance of a fair offer to purchase the property on the issue of undue hardship:

> Endeavors to sell the property to the adjoining landowners, the negotiations between and among the parties, and the reasonableness of the prices demanded and offered are also relevant considerations. See *Gougeon v. Stone Harbor Bd. of Adjustment*, 52 *N.J.* 212, 224 (1968), where it was held that if an owner of land refused to sell at a "fair and reasonable" price he would not be considered to be suffering an "undue hardship." If on the other hand the owner is willing to sell at a "fair and reasonable price" and the adjoining property owners refuse to make a reasonable offer, then "undue hardship" would exist.

>      *      *      *      *      *      *      *      *

> There lurks in the background of cases of this type the possibility that denial of a variance will zone the property into inutility so that "an exercise of eminent domain [will be] ... called for and compensation must be paid." *Harrington Glen, Inc. v. Leonia Bd. of Adjustment*, 52 *N.J.* 22, 33 (1968). When that occurs all the taxpayers in the municipality share the economic burden of achieving the intent and purpose of the zoning scheme. Compared to this result is the denial of a variance conditioned upon the sale of the property at a fair market value to the adjoining property owners. They will perhaps receive the more direct benefit of the land remaining undeveloped and it may therefore be fairer for them to bear the cost. [*Id.* at 606–07.]

Finally, in *Nash v. Board of Adjustment of Morris Township*, 96 *N.J.* 97 (1984), the vacant lot had a frontage of 110 feet compared with the ordinance's requirement of 200 feet, and an area of 18,594 feet compared to a minimum area requirement of 35,000 square feet. At the variance hearing, testimony was offered indicating that the lot with a variance was worth $31,000 to $34,000 and without the variance was worth $17,000 to $22,000. Prior to the hearing the abutting owner offered to purchase the lot for $22,000. The Board granted the variance, concluding that the evidence of undue hardship was not offset by an offer to buy the property for at least $10,000 less than its value. This Court, affirming the Appellate Division, agreed that the proper standard to determine the adequacy of the abutting owner's offer was the fair market value of the proper-

ty assuming the grant of the necessary variances. 96 *N.J.* at 107.

Two features are characteristic of all of the cases in which offers to purchase have been held relevant to the issue of hardship: First, the lot was vacant and undersized; second, the property could not be used at all unless the variances were granted.

In determining whether an offer to purchase property may be germane to a variance application, it is essential to ascertain the nature of the "practical difficulties" or "hardship" on which the application for the variance is based. The Municipal Land Use Law sets forth in some detail the affirmative showing that must be made to support a "hardship" variance:

> Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, [the board of adjustment shall have the power to] grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship * * *. [*N.J.S.A.* 40:55D–70(c)(1).] [2]

As is evident from the statutory language, relief under subsection "c" is available from *any* regulation, other than

---

[2] The recently adopted amendments to the Municipal Land Use Law, *L.*1984, *c.*20, resulted in an expansion of the statutory grounds for which a board of adjustment could grant bulk variances

> where in an application or appeal relating to a specific property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, [the board of adjustment shall have the power to] grant a variance to allow departure from regulations pursuant to article 8 of this act; provided, however, that no variance from those departures enumerated in subsection d. of this section shall be granted under this subsection; and provided further that the proposed development does not require approval by the planning board of a subdivision, site plan or conditional use, in conjunction with which the planning board

restrictions on use, enacted pursuant to the zoning power, including, for example, requirements as to lot size, setbacks, land coverage, height, and parking. Moreover, the claim of "hardship" to support the variance can derive from the property's exceptional shape, its topography, its physical features, the fact that structures already exist on the site, or from other exceptional situations that uniquely affect the property. *Cf. Isko v. Planning Bd. of Livingston,* 51 *N.J.* 162, 174 (1968) ("There is no showing in the record of any exceptional narrowness, shallowness, or shape of the hospital tract, or exceptional topographic condition of the land or any other extraordinary physical condition thereof which would cause undue hardship if the height restriction of the zoning ordinance were enforced.")

Thus, a lot with unusual topography may provide a basis for a variance from restrictions as to maximum height. A narrow lot may in some instances justify a sideyard variance. The existence of a nonconforming structure may justify a variance from maximum land-coverage requirements. The availability of public parking on adjacent property may be a factor that would support a variance from parking requirements. In each of these examples, the claimed hardship need not result in the inability to make *any* use of the property. Typically, the contention is that the strict enforcement of the zoning ordinance, in view of that property's unique characteristics, imposes a hardship that may inhibit *the extent* to which the property can be used.

Obviously, an offer to purchase *any* property that is the subject of a variance application, under either 40:55D–70(c) or

has power to review a request for a variance pursuant to subsection 47 a. of this act * * *. [*N.J.S.A.* 40:55D–70(c)(2).]

This amendment, which creates what has been termed the flexible "c" variance, *see* New Jersey State Bar Ass'n Land Use Law Section Newsletter, June, 1984, Vol. IV, No. 1, p. 3, apparently reflects the Legislature's intention to permit bulk variances where there is inadequate evidence of hardship but where the variance would advance the purposes of the Municipal Land Use Law.

(d), would, in the broadest sense, eliminate the need for the variance. But it has never been suggested that in every variance application before a municipal board of adjustment or planning board, offers to purchase the affected property may be submitted for consideration. Such a practice would directly conflict with the statutory scheme that entitles every applicant for a variance to offer proofs to satisfy the positive and negative criteria and obtain a decision by the municipal board granting or denying the variance application.

The only variance cases in which offers to purchase the affected property may properly be considered are those in which the offer is germane to the particular claim of hardship that is advanced to support the variance. As our cases demonstrate, such offers have heretofore been found pertinent only where the claim of hardship is the inability to use the property for *any* purpose. In such cases, the availability of a fair price for the property is directly relevant to the claim that without the variance, the property has in effect been confiscated by the zoning ordinance. *Harrington Glen v. Leonia, supra,* 52 *N.J.* at 29. Absent a variance claim based on inutility, evidence of offers to purchase the affected property should be excluded since they are irrelevant to the statutory criteria on which the municipal board is required to base its decision.

II

Application of these principles to the case before us is particularly difficult because the municipality apparently misapplied its own ordinance in determining what variances were required, and no appeal was taken from that determination. The majority opinion recognizes that "a question exists whether all the requested variances were required." *Ante* at 486. At oral argument, appellant's counsel acknowledged his concern that the municipality improperly required his clients to appeal for variances that were unnecessary. Since I believe the conditional variance doctrine should be restricted only to properties that

could not be *used* without the grant of variances, an analysis of the application before the local planning board will demonstrate that the doctrine was misused in this case.[3]

Concededly, the lot in question was substantially undersized (6,571 square feet compared with an ordinance requirement of 20,000 square feet) and narrow (45.87' frontage compared with an ordinance requirement of 120'). Nevertheless, the ordinance exempts pre-existing lots under single ownership from the area and frontage requirements.[4] The record before us contains no explanation for the municipality's failure to accord this property the benefit of the area and frontage protection apparently afforded by the ordinance.[5]

Appellant was also required to seek variances for front and sideyard setbacks, driveway width, and open space. The uncontradicted testimony before the Board demonstrated that compliance with these requirements was impossible primarily because of the size and location of the existing structure. The structure had been on the property since at least 1939, had been used as a residence until 1981, and was now proposed for conversion to office use, a use permitted by the ordinance. It constituted a "[n]oncomforming structure," defined by the Municipal Land Use Law as

---

[3]Although not part of the record before the Planning Board, counsel has furnished the Court with the current municipal zoning ordinance adopted in 1976, as amended.

[4]Section 510 of the zoning ordinance provides:

Any parcel of land with an area or width less than that prescribed for the zone in which such lot is located, which parcel was under one ownership at the date of the adoption of this Ordinance, when the owner thereof owns no adjoining land, may be used as a lot for any purpose permitted in the zone other than multiple dwellings, provided that all other regulations prescribed for the zone by this Ordinance are complied with.

[5]Conceivably, the property's nonconformity with frontage and area requirements initially occurred as the result of an earlier ordinance that did not protect pre-existing lots. There is nothing in the record to indicate that this occurred.

a structure the size, dimension or location of which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment. [*N.J.S.A.* 40:55D-5.]

The Municipal Land Use Law expressly protects existing structures against zoning ordinance changes that render such structures nonconforming. *N.J.S.A.* 40:55D-68 provides:

Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.

The statutory protection afforded to nonconforming structures precludes a municipality from enforcing setback and other spatially related requirements against a structure in existence before the ordinance's requirements were adopted. Accordingly, it would appear that the municipality in this case erred in requiring appellant to seek variances for front and sideyard setbacks, driveway width, and open space, since the deviations from the zoning ordinance requirements for these aspects of the application were attributable to the pre-existing location of a nonconforming structure on the lot.[6]

The remaining variance was for insufficient parking. Although the structure contained a basement of 1,416 square

---

[6]The ordinance required a minimum width of 25 feet for two-way driveways. At the hearing before the Board, plaintiff's architect testified that the driveway width at the entrance to the lot was 22 feet but that the width of the driveway tapered down to 10.8 feet as a result of the location of the existing structure. Although the record is unclear, it is reasonable to assume that the entire deficiency in the width of the proposed driveway is attributable to the location of the structure on the lot.

The ordinance also required open space equal to 25% of the area of the lot, but parking areas and driveways were not included as part of the required open space. The applicant's inability to comply with the open-space requirement was attributable to the combined effect of the area of the existing structure (approximately 1,800 square feet), the area occupied by the six proposed parking spaces (approximately 1,200 square feet) to be installed where an existing garage was being demolished, and the area occupied by the driveway.

feet, a first floor of 1,824 square feet, and a second floor of 425 square feet, the applicants testified that they intended to occupy only the first floor. The zoning ordinance required one parking space for each 200 square feet of office space, but Section 2401 of the ordinance appeared to exempt existing structures from this requirement as well:

> 2. None of the off-street parking facilities as required in this Ordinance shall be required for any existing building or use not now conforming to these requirements, unless said building or use shall be enlarged, in which case the provisions of this Ordinance shall apply.

By removing an existing garage on the property, appellant was able to provide six parking spaces, requiring at the maximum a variance for a shortage of four spaces, without regard to the protection accorded by the exemption for existing structures. The testimony at the hearing was that the offices would be occupied by one attorney, who also maintained an office in Pennsylvania, a one-man real estate office, and a secretary servicing both occupants. Although the issue was not raised before the Board, a voluntary restriction of occupancy to 1200 square feet of the structure could apparently have eliminated the need for any parking space variances.

In view of the imperfect record before us, it is indeed difficult to reconstruct the application to that which should have been the subject of the Planning Board's review. Because the Board's site plan hearing followed the variance hearing, it was understandably abbreviated; the site plan review process undoubtedly would have been more elaborate if the municipality had correctly determined the variances required by the application. Nevertheless, it would not appear that this was a case in which the municipality properly could have denied appellant the right to make any use of the property for offices. In fact, the objector's expert conceded that a smaller office building of approximately 1,000 square feet, with parking below the building, would be an appropriate use. At most, the board may have been empowered to restrict the extent of the occupancy of the existing structure because of the apparent deficiency in parking spaces.

Variance appeals afford an opportunity for property owners to seek relief from various aspects of municipal zoning regulation. Such appeals are entrusted to the sound discretion of the municipal board, guided by the positive and negative criteria set forth in the statute. Ordinarily, an applicant for a variance is entitled to a grant or denial of the application without reference to whether an abutting owner may be interested in purchasing the property. Until now, our cases have properly restricted the consideration of an abutting owner's offer to purchase the property to appeals involving a vacant, undersized lot in which the denial of required variances would render the property useless. In my view, the Board's consideration of the adjacent owner's offer in this case was clearly erroneous. The majority opinion's neutral position on this issue may generate unnecessary confusion in future variance cases as to the relevance of offers to purchase the affected property.

As stated, I concur with the majority's reversal of the Appellate Division's judgment.

WILENTZ, C.J., and STEIN, J., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7

*For modification*—None.