**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0070-24

ELY EDDI,

    Plaintiff-Appellant,

v.

ELBERON MEMORIAL
PRESBYTERIAN CHURCH,
1101 INVESTOR LLC, and
COLIN GAINES,

    Defendants-Respondents.

_____

        Argued March 26, 2026 – Decided April 8, 2026

        Before Judges Mawla and Puglisi.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1866-21.

        Bruce D. Greenberg argued the cause for appellant (Lite DePalma Greenberg & Afanador, LLC, attorneys; Bruce D. Greenberg and Collin J. Schaffhauser, on the briefs).

        Jeffrey A. Donner argued the cause for respondents (Donner Law Associates, LLC, attorneys; Jeffrey A. Donner, on the brief).

PER CURIAM

Plaintiff Ely Eddi appeals from a July 30, 2024 judgment, which dismissed his breach of contract claim against defendant Elberon Memorial Presbyterian Church and his claim for tortious interference with the contract against defendants 1101 Investor LLC (1101) and 1101's majority owner Colin Gaines. We affirm.

This matter was the subject of a nine-day trial resulting in the trial judge issuing a detailed written opinion. The parties are familiar with the facts, which we summarize here.

The church owned property in Long Branch, located in an R-1 zone.[1] It wanted to sell a portion of the property and use the funds to repair the church building.

Gaines owned two lots adjoining the church's property. In April 2019, the church began discussions with him about a potential sale. In February 2020, the church entered a contract to sell part of its property to plaintiff instead.

---

[1] The R-1 zoning district is a one-family residential zone. It accounts for the lowest density and the largest single-family residential lot sizes in Long Branch. The master plan limits this zone to "single-family detached dwellings at densities of [two] to [four] units per acre." Long Branch, 2009 Master Plan 12, 19 (March 2010). The minimum lot size is 17,500 square feet. Long Branch, N.J., Ordinances §§ 345-20, -102.

A-0070-24

The church's contract with plaintiff was negotiated over the subsequent six months and finalized in July 2020. Plaintiff agreed to pay $725,000 for the parcel, and the church agreed to obtain approval for a subdivision within six months, with the option of a three-month extension.

After plaintiff and the church entered their contract, Gaines expressed interest in purchasing the parcel. The church negotiated with Gaines, culminating in an agreement reached by email in December 2020. While the church was negotiating with Gaines, it was also discussing amendments to the contract it had with plaintiff.

On May 27, 2021, the church's attorney sent a letter advising plaintiff the church was not proceeding with the sale and terminating the contract. Plaintiff sued the church the next day for specific performance, breach of contract, and breach of the implied covenant of good faith and fair dealing. He later amended the complaint to include a tortious interference with contractual relations claim against 1101 and Gaines, and a consumer fraud claim against the church.

On June 4, 2021, the church entered a formal contract to sell the property to 1101 for $675,000. The contract obligated 1101 to pay the costs of obtaining subdivision approval.

A-0070-24

The trial judge heard testimony from twelve witnesses and considered numerous exhibits. On the eighth day of trial, plaintiff moved to withdraw his claim for specific performance with prejudice. Defendants opposed the withdrawal, citing the fact they relied on plaintiff pursuing the claim. The judge granted the withdrawal request, noting plaintiff's request for a monetary award remained a part of the case.

The judge conducted a thorough analysis of plaintiff's remaining claims. As for the breach of contract claim, she concluded the evidence showed the church never provided a subdivision plat to plaintiff showing "the exact proposed lot line[] in order to proceed with the preparation of plans that could be submitted to the [p]lanning [b]oard." The church never had a surveyor prepare the final subdivision plat. If it "believed it needed plans from [plaintiff] . . . to finalize the subdivision plat, [it] never responded to [his] many requests for the status of the subdivision application by advising that it needed [him] to provide the plans." Although the subdivision application could have been submitted without plaintiff's plans, "the plans would have been ultimately required by the . . . [b]oard."

The church claimed its inaction was not a breach of contract because it was awaiting receipt of plans from plaintiff, who was the party in breach,

A-0070-24

because he did not provide plans for the construction of a residence on the proposed subdivision. Because 1101 made a competing offer, the church claimed it was impossible for it to obtain board approval for the subdivision as a variance application pursuant to N.J.S.A. 40:55D-70(c)(1) or (2).

The judge rejected the church's arguments, noting it ignored the fact it was obligated to obtain a subdivision plat to depict the subdivision line under its contract with plaintiff. The contract with plaintiff also required the church to keep plaintiff's counsel "fully informed as to the [s]ubdivision process and status." The church never provided the subdivision plat to plaintiff and only obtained it for 1101 after it entered the contract with 1101, which the judge noted was "several months after the [c]hurch had advised [plaintiff] that it would be selling the property to him. . . . The [c]hurch had the obligation to pursue the application for subdivision approval."

The judge turned next to the June 2021 contract between 1101 and the church. The contract did not state it was a backup or that it was contingent on the termination of the contract between plaintiff and the church. But the contract did acknowledge there was a prior proposed buyer and contained an indemnification provision requiring 1101 to indemnify the church for its costs defending a lawsuit by plaintiff.

5

A-0070-24

The judge noted "the [c]hurch operated on the belief, whether correct or incorrect, that a subdivision application filed in accordance with [its] contract [with plaintiff] would be difficult to obtain if Gaines made a reasonable offer to purchase the property." Based on the evidence, the judge was "satisfied that entering into a backup contract . . . subject to a contingent contract" was not a breach of contract by the church. Nor was there a breach by "discussing the potential contingent sale to 1101, exchanging communications on a potential sale to 1101, [or] entering into the mid-December 2000 agreement with 1101/Gaines."

The judge found the breach was the church's failure to follow through on its obligations to plaintiff. She concluded "the [c]hurch failed to pursue subdivision approval as required under [its contract with plaintiff], and failed to advise [plaintiff] of the progress, or lack of progress, on an application." Plaintiff thus proved the initial three elements of a breach of contract claim, namely: the parties had a contract with specific terms; plaintiff did what it was required to do; and the church did not perform its obligations.

However, plaintiff's claim failed because he could not prove damages. The evidence failed to show the board "would have granted the subdivision application presented in accordance with the contract between [plaintiff] and the

A-0070-24

[c]hurch." Defendants adduced testimony from a planning expert who explained a subdivision application would not have met the (c)(1) or (c)(2) criteria. The church would not be able to establish a hardship necessitating the subdivision because 1101 was an adjoining property owner who could purchase the non-conforming lot, obviating the need of a variance.

The judge rejected plaintiff's expert's testimony to the contrary, reasoning "[i]t is difficult to imagine that the offer by 1101 would not have come to the attention of the . . . [b]oard, given Gaines' stated intent to appear before the . . . [b]oard to object to a subdivision application filed under the [plaintiff/c]hurch contract." She observed board members are permitted to rely upon their knowledge of the area in deciding an application. It was expected they would do so because "local boards are not limited in the evidence presented to the rules of evidence and procedure that govern a trial in the Superior Court."

Plaintiff claimed, before trebling the damages per the Consumer Fraud Act (CFA), N.J.S.A. 56:8-19, his damages totaled more than $2.1 million, comprised of the purchase price of the land and construction costs of a residence he intended to sell, less the realty transfer fee. The judge rejected his argument, noting neither party's land use expert opined whether the board would have granted the application. "No evidence was presented by either party of any

7

history of subdivision applications resulting in undersized lots in the R-1 zone, or any other zone in Long Branch." Although there was a nearby row of properties that did not meet the R-1 zone requirements, "no evidence was presented . . . those lots were created through variance approvals by the . . . [b]oard."

Plaintiff, therefore, "did not prove . . . his assertion that '[h]ad the [church] fulfilled its [contractual] obligations[,] . . . [he] would have acquired the [property].' This is a necessary element of [plaintiff]'s claim." Because plaintiff could not prove the board would have granted the application, he could not prove he suffered monetary damages due to the church's breach.

The judge also found plaintiff's proof of damages "unconvincing" because the comparable properties used to derive the sale price of the property plaintiff intended to build "were fully functioning homes that were landscaped. Many had upper-end finishes. All or most of the comp properties had swimming pools." The estimate plaintiff provided for the home he intended to build lacked these characteristics and "was incomplete." According to the judge, plaintiff attempted "to provide an off-the-cuff and non-specific estimate [of] the cost of . . . many items that were excluded from [his] estimate," which "was not at all convincing."

A-0070-24

Because plaintiff withdrew his claim for specific performance, neither party briefed nor argued the issue at trial. As a result, the judge concluded she could not address whether specific performance was possible.

The judge found plaintiff did not prove a breach of the covenant of good faith and fair dealing because, having reviewed the evidence, she could not conclude the church "engage[d] in behavior with a 'bad motive or intention,' or a 'malice-like element.'" The church had the legal right "to negotiate and enter into a backup contract for the sale of the property with 1101/Gaines." This claim also suffered from a lack of proof of damages.

Plaintiff predicated the tortious interference claim on the assertion 1101 and Gaines knew about plaintiff's contract with the church yet interfered with it by appearing before the board to object to the subdivision with intent to impede the contract and damage plaintiff. The judge recalled plaintiff's counsel conceded Gaines' appearance before the board to object to the subdivision "would not provide a basis for a tortious interference with [plaintiff]'s contractual rights claim, but rather the claim was based upon Gaines' negotiation [of] a contract with the [c]hurch while [plaintiff]'s contract with the [c]hurch was pending." Even so, "1101 had a constitutional right to appear through Gaines . . . before the . . . [b]oard to object to the subdivision" because "1101

9

A-0070-24

owned two adjoining properties, and Gaines was [its] shareholder . . . and managing member."

The judge also rejected plaintiff's assertion the negotiation of a backup contract constituted a tortious interference. No legal authority supported the notion "a seller is not permitted to enter into a backup contract providing for the sale of real property to a buyer, contingent upon a contract already entered into by the seller with another person or entity."

The record also lacked evidence of malice because "[w]hen 1101 entered into the contract with the [c]hurch[,] . . . the [c]hurch had taken the position, correctly or incorrectly, that the contract with [plaintiff] had been terminated." This was not evidence of "actual interference with a contract." As with the breach claims, the tortious interference claim failed because plaintiff lacked evidence showing "defendants' interference caused damage."

The judge entered a final judgment dismissing all of plaintiff's claims, including the CFA claim, which is not part of this appeal. She granted the church's counterclaim to discharge plaintiff's lis pendens and dismissed its counterclaim against plaintiff for breach of the covenant of good faith and fair dealing.

## I.

On appeal, plaintiff challenges the trial judge's rulings he did not prove damages because he could not show whether the board would have approved the subdivision. He asserts the judge should have considered the evidence herself to decide whether a subdivision would have been granted. The judge also erred because she improperly relied upon the church's misconduct and breach of contract—which ultimately doomed plaintiff's subdivision application—as a basis to conclude the board would not grant the application.

Plaintiff argues he proved an undue hardship, showing the board would have granted him a (c)(1) variance. He also met the positive criteria for a (c)(2) variance, as well as the negative criteria for a (c)(1) and (c)(2) variance. However, the judge erroneously relied upon defendants' expert when she concluded neither variance would be granted.

Plaintiff claims the judge misapplied the law when she dismissed the tortious interference claim. She made a similar mistake when she decided plaintiff could not prove damages.

## II.

"Our review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div.

11

2023). "[F]indings [of fact] by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

Questions of law, however, are reviewed de novo. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

It is fundamental that "[c]ourts cannot substitute an independent judgment for that of the [local municipal] boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work." Kramer v. Bd. of Adj., 45 N.J. 268, 296 (1965). "Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people[] are undoubtedly the best equipped to pass initially on . . . applications for variance." Ward v. Scott, 16 N.J. 16, 23 (1954).

Pursuant to these principles, we reject plaintiff's argument the trial judge erred in finding he did not prove the board would have granted the subdivision. Although it was undisputed the church breached its contract with plaintiff, the

judge correctly held the evidence did not show the board would have granted the variance, even if the church had complied with its contractual obligations.

Indeed, the trial evidence showed the subdivision and variance applications would have been contested. Plaintiff's expert testified he would have argued the (c)(1) and (c)(2) variances were necessary for the subdivision, while the defense expert would have argued they were not. Gaines testified he would have opposed a subdivision application made pursuant to plaintiff's contract with the church. He would have told the board he was offering fair market value for the property, and he intended to add to his parcels to create an oversized lot conforming to the R-1 zone requirements, rather than create an undersized lot.

It was not enough for plaintiff to show a breach of contract; he had to establish the damages were a "reasonably certain consequence" of the church's breach. Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 343 (App. Div. 2021) (quoting Donovan v. Bachstadt, 91 N.J. 434, 445 (1982)). Given the idiosyncrasies of land use matters, including the specialized nature of land use boards and the deference courts owe to them, the judge was correct not to prognosticate on whether the subdivision application would have been granted. See Popular Refreshments, Inc. v. Fuller's Milk Bar & Recreation Ctr., Inc., 85

A-0070-24

N.J. Super. 528, 536, 540 (App. Div. 1964) (affirming denial of damages under contract for sale of land where "[s]ubdivision approval by the local planning board or governing body was an implied condition of the contract . . . and was never fulfilled" because compliance with the contract "rest[ed] in the will or discretion of a third party uncontrolled by the defendant," and "there was no assurance that the . . . subdivision would have been approved"); Ridge Chevrolet-Oldsmobile, Inc. v. Scarano, 238 N.J. Super. 149, 152, 156-57 (App. Div. 1990) (declining to order specific performance of a land sale contract where "the condition precedent" to the contract—obtaining site plan, wetland, and variance approval from the local board—was "neither . . . met nor waived," and noting "whether such conditions w[ould] ever be met [wa]s a matter solely within the discretion of a third party, the [b]oard of [a]djustment").

Setting aside the fact the subdivision decision belonged to the board in the first instance, we are unconvinced the record supports plaintiff's argument the judge could have decided plaintiff's variance applications would have been approved. "An applicant who pursues a variance under N.J.S.A. 40:55D-70(c)(1) must establish that the particular conditions of the property present a hardship." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 29 (2013). In addition to showing a hardship, "an applicant for a (c)(1) variance must satisfy the

negative criteria" which "require[s] proof that the variance will not result in substantial detriment to the public good or substantially impair the purpose of the zoning plan." Id. at 30.

"The efforts made to bring the property into compliance with the ordinance are factors that must be considered." Id. at 29-30. "Those efforts may include attempts to acquire additional land or offers to sell the nonconforming lot to adjacent property owners." Id. at 30. "[A] fair market value offer to purchase the property by an adjoining owner is a relevant, but not dispositive, consideration in determining whether hardship exists." Davis Enters. v. Karpf, 105 N.J. 476, 482-83 (1987). Rather, "such an offer would constitute a circumstance to be considered in the application of the [b]oard's statutory discretion to the whole case." Id. at 483 (quoting Gougeon v. Bd. of Adj., 54 N.J. 138, 148-49 (1969)).

"The availability of a hardship variance depends on how the hardship was created." Jock v. Zoning Bd. of Adj., 184 N.J. 562, 590 (2005). "Where the hardship has been created by the applicant, or a predecessor in title, relief will normally be denied . . . ." Id. at 591.

"N.J.S.A. 40:55D-70(c)(2) permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would

A-0070-24

advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment." Ten Stary Dom P'ship, 216 N.J. at 30. "For a (c)(2) variance, approval must be rooted in the purposes of the zoning ordinance rather than the advancement of the purposes of the property owner." Ibid. "Thus, the positive criteria include proof that the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance the purposes of zoning." Ibid. "[T]he grant must actually benefit the community in that it represents a better zoning alternative for the property." Jacoby v. Zoning Bd. of Adj., 442 N.J. Super. 450, 471 (App. Div. 2015). "As with the (c)(1) variance, the negative criteria include proof that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan." Ten Stary Dom P'ship, 216 N.J. at 30.

The substantial credible evidence in the record does not convince us the variances would have been granted. The board could have concluded the hardship was self-created or it was better to deny the variance in favor of 1101 acquiring the property, keeping it in conformance with the R-1 zone. The trial judge essentially found the experts' opinions were in equipoise, meaning plaintiff did not meet his burden of proof. Under the preponderance of the

16

evidence standard, "[i]f the evidence is in equipoise, the burden has not been met." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006) (quoting Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 5a on N.J.R.E. 101(b)(1) (2005)).

It is not our role to re-weigh the judge's assessment of the expert testimony. "[T]he weight to be given to the evidence of experts is within the competence of the fact-finder." LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001). A trial judge has "wide discretion to accept or reject an expert's testimony, either in whole or in part." Sipko v. Koger, Inc., 251 N.J. 162, 188 (2022).

Finally, we affirm the rejection of plaintiff's evidence on the amount of his alleged damages and the finding there was no tortious interference with his contract with the church for the reasons expressed by the trial judge. On both scores, the judge's rulings were sound and based on the substantial credible evidence in the record. We decline to second guess the judge's fact-finding and are unconvinced she misapplied the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0070-24