963 A.2d 1208 (2009)
405 N.J. Super. 189
Thomas WILSON, Plaintiff-Appellant,
v.
BRICK TOWNSHIP ZONING BOARD OF ADJUSTMENT, Defendant-Respondent.
No. A-3622-07T3
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2008.
Decided January 22, 2009.
*1210 Robert J. Pansulla, Belleville, argued the cause for appellant (Gaccione, Pomaco & Malanga, attorneys; Mr. Pansulla, on the brief).
Kenneth B. Fitzsimmons, Point Pleasant Beach, argued the cause for respondent (Sinn, Fitzsimmons, Cantoli & West, P.A., attorneys; Mr. Fitzsimmons, of counsel and on the brief).
Before Judges STERN,[1] PAYNE and LYONS.
The opinion of the court was delivered by
LYONS, J.A.D.
Plaintiff, Thomas Wilson, appeals from an order dismissing his complaint with prejudice and affirming the denial by defendant, Brick Township Zoning Board of Adjustment, of plaintiff's application for seven bulk zoning variances. The following factual and procedural history is relevant to our consideration of the issues advanced on appeal.
Plaintiff owns property located in Brick Township, which is in an R-5 zone, permitting single-family residential structures. Plaintiff's house is a two-story frame dwelling set back forty-one feet from the street and eighteen feet from the rear property line. The rear of the property borders on Barnegat Bay and plaintiff has title to a riparian grant covering the land between the end of the property line and the bulkhead, which is constructed 2.48 feet beyond the property line.
In 1999, at the time that plaintiff purchased the property, there was an existing deck on the premises that covered most, but not all, of the back yard, and that extended beyond the rear property line *1211 past the bulkhead. After purchasing the property, plaintiff expanded the deck so that it covered the entire back yard. The deck was also raised fifty-four inches in height, and a swimming pool was built into the deck. Plaintiff constructed the improvements without obtaining the necessary permits, which led to litigation and his eventual payment of fines.
Plaintiff's construction did not comply with the Township's bulk zoning requirements regarding the location of the improvements. In July 2006, plaintiff filed an application with defendant for variances seeking approval of the previously constructed deck and swimming pool. Specifically, the bulk variances sought by plaintiff were:

 Item Required Provided
-------------------------------------------------------------------------------
rear yard setback (deck) 15 feet 0 feet
-------------------------------------------------------------------------------
rear yard setback (pool) 5 feet 0 feet (within existing
 deck)
-------------------------------------------------------------------------------
side yard setback (dwelling) 5 feet (one side) / 12 5.1 feet (one side) / 11
 feet (total) feet (total)
-------------------------------------------------------------------------------
side yard setback (deck) 5 feet (one side) / 12 0 feet (one side) / 5.6
 feet (total) feet (total)
-------------------------------------------------------------------------------
side yard setback (pool) 5 feet 3.4 feet (within existing
 deck)
-------------------------------------------------------------------------------
side yard setback (shed) 4.1 feet (1/2 height) 3.3 feet
-------------------------------------------------------------------------------
maximum lot coverage 35% 49.7%
-------------------------------------------------------------------------------

The Township's zoning officer issued a report on the application, and the proper notice of hearing was published as required by law.
On November 1, 2006, a hearing was held on the application, where plaintiff produced the expert testimony of Charles Lindstrom, an engineer and professional planner. Mr. Lindstrom testified that the dwelling was constructed in order to provide a large front yard (forty-one feet from the street) and a much smaller back yard (eighteen feet from the property line). Plaintiff's proposal was to remove the portion of the deck that extended past the bulkhead, bringing it back to the end of the bulkhead. He further testified that there was a minor deficiency in the side yard setback requirement of the dwelling due to its construction prior to a recent amendment to the ordinance. The current ordinance required a twelve foot combined side yard setback, whereas the dwelling had only an eleven foot combined side yard setback.[2]
Mr. Lindstrom concluded that fitting a pool within the deck as it existed in 1999 in conformity with the setback requirements would have been "impossible." Mr. Lindstrom also noted in his testimony that "basically, the entire neighborhood is developed exactly as the Wilsons are developed with a raised deck and a pool." He further emphasized this point by testifying that removal of the deck and pool would render plaintiff's property "out of character with the neighborhood." In referring to photographs admitted into evidence, Mr. Lindstrom testified that the deck and pool were consistent with the neighboring adjacent *1212 properties, and did not infringe upon light, air, and open space. While Mr. Lindstrom acknowledged that he did not survey every property in the neighborhood, he testified that he conducted his investigation by visual inspection of the neighboring properties from plaintiff's dock and by examining aerial photographs. He noted plaintiff's pool could not be seen from the street or the bay; the pool could only be seen from the vantage point of a neighboring deck that was similarly arranged.
Mr. Lindstrom also testified that granting the variance would "promote [a] desirable visual environment." He went on to state:
I think if you look at the photos, you see that every house is harmonious in the sense that they have these living areas and it is a desirable visual environment. I think that actually, adequate light, air and open space is maintained because of the proximity to the Barnegat Bay and this is their living space on the lot. I don't think light, air and open space is infringed upon with this lot having this condition. All the lots have the same condition.
Plaintiff acknowledged through counsel that any variances granted by the Board would have to be conditioned upon approval by the New Jersey Department of Environmental Protection (DEP), pursuant to the Coastal Area Facility Review Act (CAFRA).
In its resolution denying the bulk variances, defendant stated:
[t]he Board finds and determines that the existing pool was built after the property was acquired by the applicant without obtaining a permit. The deck was enlarged by the applicant without obtaining a permit. Although there was testimony about adjoining properties having similarly situated decks and pools, no proof was submitted as to whether the adjoining properties obtained appropriate building permits. Mr. Mizer, the Township Sub-Code Official, testified that the properties adjoining the applicant's property are not a good indication of the development of the properties in the entire neighborhood. The Board further finds that there was no testimony given regarding the necessity of having the pool situated in its present location. There was no testimony that a pool could not be built without variances. There was no testimony as to the possibility of reducing the size of the deck or pool. There was no testimony that the applicant could not provide adequate setbacks for the deck. The applicant has failed to provide any testimony to substantiate a hardship requiring the granting of the variances requested. The Board finds that any hardship was created by the applicant himself. The Board finds that the application is not in keeping with the Municipal Zoning Ordinance and Master Plan.
On January 2, 2007, plaintiff instituted suit by filing a complaint in lieu of prerogative writs. On or about February 5, 2007, defendant filed an answer.
On January 18, 2008, a trial was held, and on January 31, 2008, the court issued a written opinion upholding the decision of the Board. The trial court found that the reasons given by defendant for denial of plaintiff's seven variances were amply supported by competent and credible evidence in the record and defendant's denial of plaintiff's application was not arbitrary, capricious or unreasonable. A final order of judgment was entered on February 13, 2008, affirming the Board's resolution and dismissing plaintiff's complaint with prejudice. On March 27, 2008, plaintiff filed a Notice of Appeal.
*1213 On appeal, plaintiff presents the following arguments for our consideration:
POINT I:
RESPONDENT'S ACTIONS WERE ARBITRARY, CAPRICIOUS OR UNREASONABLE IN DENYING VARIANCE RELIEF UNDER THE CIRCUMSTANCES.
A. The minor bulk variances can be granted under a C(2) analysis.
B. The minor bulk variances can be granted under a C(1) analysis.
C. Reversal would be appropriate without remand.
In reviewing a decision to grant a variance, courts typically recognize that municipal bodies, "because of their peculiar knowledge of local conditions, must be allowed wide latitude in the exercise of their delegated discretion." Booth v. Bd. of Adjustment of Rockaway Tp., 50 N.J. 302, 306, 234 A.2d 681 (1967).
[T]he judicial role in reviewing a zoning ordinance is tightly circumscribed. There is a strong presumption in favor of its validity, and the court cannot invalidate it, or any provision thereof, unless this presumption is overcome by a clear showing that it is arbitrary or unreasonable.
[Harvard Ent., Inc. v. Madison Tp. Bd. of Adjustment, 56 N.J. 362, 368, 266 A.2d 588 (1970).]
Specifically,
[a] local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.
[Kramer v. Sea Girt Bd. of Adjustment, 45 N.J. 268, 296-97, 212 A.2d 153 (1965).]
On appeal, the courts "will give substantial deference to findings of fact, [however,] it is essential that the board's actions be grounded in evidence in the record." Fallone Properties, L.L.C. v. Bethlehem Tp. Planning Bd., 369 N.J.Super. 552, 562, 849 A.2d 1117 (App.Div. 2004).
While a Board of Adjustment's exercise of its discretionary authority based on its factual determinations will not be overturned unless arbitrary, capricious or unreasonable, legal determinations are not entitled to a presumption of validity and are subject to de novo review. Wyzykowski v. Rizas, 132 N.J. 509, 518-20, 626 A.2d 406 (1993).
Further, while expert testimony is often presented to a Board of Adjustment and is found helpful, a Board is not bound to accept the testimony of any expert. See El Shaer v. Planning Bd. of Lawrence, 249 N.J.Super. 323, 330, 592 A.2d 565 (App. Div.1991), certif. denied, 127 N.J. 546, 606 A.2d 360 (1992).
Under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, a municipality's Board of Adjustment is authorized to grant bulk zoning variances if the required criteria are met. N.J.S.A. 40:55D-70(c). Plaintiff argues that the variances applied for in this case should have been granted pursuant to N.J.S.A. 40:55(D)-70(c)(1) ("C1"), as well as N.J.S.A. 40:55D-70(c)(2) ("C2").

C2 Analysis
Plaintiff argues that he was entitled to the bulk variances sought pursuant to C2. C2 provides:
where in an application [for a variance] or [an] appeal relating to a specific piece of property the purposes of [the MLUL]... would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would *1214 substantially outweigh any detriment, grant a variance to allow departure from regulations....
[N.J.S.A. 40:55D-70(c)(2).]
The negative criteria of N.J.S.A. 40:55D-70 must also be met. That is, the variance can be granted "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70.
With respect to a C2 application, the Supreme Court has said:
[b]y definition, then, no c(2) variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a c(2) case, then, will be not on the characteristics of the land that, in light of current zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community.
[Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 563, 542 A.2d 457 (1988) (emphasis omitted).]
However, "[a] `c(2)' variance is not necessarily unavailable because the applicant has created the condition which requires the variance." Green Meadows at Montville, L.L.C. v. Planning Bd. of Montville, 329 N.J.Super. 12, 22, 746 A.2d 1009 (App. Div.2000).
A C2 variance then is not based upon "hardship" but "requires a balancing of the benefits and detriments from the grant of the variance." Bressman v. Gash, 131 N.J. 517, 523, 621 A.2d 476 (1993), citing Kaufmann, supra, 110 N.J. at 558-60, 542 A.2d 457. The analysis focuses on advancing the purposes of the MLUL and the benefits to the community.
In sum, the application for a variance under C2 requires:
(1) [that it] relates to a specific piece of property; (2) that the purposes of the Municipal Land Use Law would be advanced by a deviation from the zoning ordinance requirement; (3) that the variance can be granted without substantial detriment to the public good; (4) that the benefits of the deviation would substantially outweigh any detriment and (5) that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance.
[William M. Cox, New Jersey Zoning and Land Use Administration, § 6-3.3 at 143 (Gann 2008), citing Ketcherick v. Bor. of Mountain Lakes, 256 N.J.Super. 647, 657, 607 A.2d 1039 (App.Div.1992); Green Meadows, supra, 329 N.J.Super. at 22, 746 A.2d 1009.]
A C2 variance applicant must set forth what purposes of the MLUL will be advanced by granting the requested variance. Plaintiff argues that its application advances the following three purposes of the MLUL:
a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
[...]
e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
[...]
g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to *1215 their respective environmental requirements in order to meet the needs of all New Jersey citizens....
[N.J.S.A. 40:55D-2(a)(e) and (g).]
In Kaufmann, the New Jersey Supreme Court ruled that there was sufficient public benefit to warrant a C2 variance, when it "effectuate[d] the goals of the community as expressed through its zoning and planning ordinances." Kaufmann, supra, 110 N.J. at 564, 542 A.2d 457. The decision was based in part upon the conformity of a partitioned lot to other properties in the neighborhood, and to the municipality's goal of "discouraging large lot zoning in [that] area of town." Id. at 564, 542 A.2d 457. Moreover, the court said, "[a] c(2) variance stands if, after adequate proofs are presented, the board without arbitrariness concludes that the harms, if any, are substantially outweighed by the benefits." Id. at 565, 542 A.2d 457.
Given our scope of review, we agree with defendant and the trial court that the criteria for a C2 variance were not demonstrated in this case. Kaufmann is clear that the grant of approval must "actually benefit the community in that it represents a better zoning alternative for the property." Id. at 563, 542 A.2d 457. In this case, based on the proofs submitted, defendant concluded that rather than advancing any benefit to the community, the application would merely alleviate a hardship to the applicant which he himself created. Given the proofs and findings in this case, we find sufficient support in the record that the purposes of the MLUL set out in sub-section(a) of N.J.S.A. 40:55D-2, as well as sub-sections (e) and (g), would not be advanced by plaintiff's improvements.
In this case, plaintiff's expert testified that the pool and deck cannot be seen from the street or the bay. Consequently, there is adequate support for the apparent conclusion by defendant that plaintiff's improvement would not be a visual improvement to the community. There is then no apparent benefit to the community. Moreover, this plaintiff sought a variance after building the improvement without permits, after a stop order, and without any showing as to why some or all of the zoning ordinances could not have been complied with in the design and installation of a deck and pool. Such action cannot be said to advance the purpose of the MLUL, and may well be a detriment to the intent and purposes of the zoning ordinance.

C1 Analysis
The MLUL provides a Board of Adjustment may grant a C1 variance:
[w]here: ... (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation... would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardships upon, the developer of such property....
[N.J.S.A. 40:55D-70(c)(1)(c).]
These criteria are referred to as the "positive criteria." See Bressman, supra, 131 N.J. at 522-23, 621 A.2d 476. In addition to requiring proof of the "positive criteria," the C1 variance also requires proof of what is referred to as the "negative criteria," also found in N.J.S.A. 40:55D-70(c), which provides that an applicant must demonstrate "that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zoning plan and zoning ordinance." N.J.S.A. 40:55D-70.
There are then, given the facts in this case, five criteria that had to have been met before a C1 variance could have been granted to plaintiff by defendant. They are: (1) a lawfully existing structure on a specific piece of property; (2) an extraordinary *1216 and exceptional situation uniquely affecting that structure; (3) an extraordinary and exceptional situation resulting in (a) peculiar and practical difficulties or (b) exceptional and undue hardship if there were a strict application of the zoning code; (4) the grant of the variance would have no substantial detriment to the public good; and (5) the grant of the variance would not substantially impair the intent and purpose of the zoning plan and zoning ordinance. N.J.S.A. 40:55D-70.
After reviewing the record in this case, it is clear to us that the record supports granting a variance with respect to one of the seven variance requests made, specifically the rear yard setback with respect to the deck. None of the parties have contested that the home is a lawfully existing structure on the property. The home, as constructed, has a forty-one foot front yard set back and an eighteen foot rear yard setback. Because of the location of this lawfully existing structure on the property and the fifteen foot required rear yard setback for a deck, a strict application of the zoning ordinance would result in allowing only a three foot deck. The resulting situation would certainly present "peculiar and exceptional practical difficulties" for the homeowner.[3] Further, the proofs indicate that a variance with respect to the rear yard deck setback would not be a substantial detriment to the public good or impair substantially the intent and purpose of the zoning plan and ordinance. Consequently, because the lawfully existing dwelling's placement on the lot creates an extraordinary and exceptional situation resulting in peculiar and exceptional practical difficulties to an owner who wishes to place a deck larger than three feet in his rear yard and because none of the negative criteria would be affected by this development, the variance with respect to the rear yard deck setback should have been granted.
We note that N.J.S.A. 40:55D-70(c)(1)(c) states that a variance may be granted when strict application of any regulation "would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardships upon, the developer of such property...." (Emphasis added). The Legislature's use of the term "or" is significant. N.J.S.A. 1:1-1 states that "[i]n the construction of the law and statutes of this state, ... words and phrases shall be read and construed with their context, and shall, ... be given their generally accepted meaning, according to the approved usage of the language." The Legislature's use of the term "or" in N.J.S.A. 40:55D-70(c)(1)(c) between the phrases "peculiar and exceptional practical difficulties" and "exceptional and undue hardships" is disjunctive. See State v. Smith, 262 N.J.Super. 487, 506, 621 A.2d 493 (App.Div.), certif. denied, 134 N.J. 476, 634 A.2d 523 (1993) (holding "[w]hen items in a list are joined by a comma or semicolon, with an `or' preceding the last item, the items are disjunctive."). Therefore, a developer may seek a variance under either phrase, provided the other relevant criteria are met. To hold otherwise would render the phrase superfluous. Aragon v. Estate of Snyder, 314 N.J.Super. 635, 640-41, 715 A.2d 1045 (Ch.Div.1998) (holding a statute *1217 "should be construed so that effect is given to all its provisions, such that no part will be inoperative or superfluous, void or insignificant....)."
With respect to the other six variances sought by plaintiff in his application, we agree with defendant and the trial court that plaintiff failed to prove all of the C1 variance requirements were met.[4] While plaintiff's expert testified that construction of the deck and pool within the zoning requirements was "impossible," there was no detail given to support this conclusion and defendant was not bound by such testimony, particularly when it had a survey of the site in evidence it could peruse. El Shaer, supra, 249 N.J.Super. at 330, 592 A.2d 565. The survey raises a number of questions as to how and whether a conforming deck and pool could be placed in the eighteen foot rear yard.
We are unable to discern from the record, in particular the surveys in evidence, whether a conforming deck and pool could be built in plaintiff's rear yard without a variance other than one for the rear yard deck setback, which we have already discussed. There are no proofs regarding that other than plaintiff's expert's conclusionary opinion that it would be "impossible." The open question is whether the strict application of the municipality's zoning ordinance to plaintiff's desire to improve the rear yard of his property with a deck and pool results in peculiar and exceptional practical difficulties due to the size of the rear yard where the limited rear yard is the result of the apparently legal placement of the house on the lot. If plaintiff is able to demonstrate that to defendant, he must then demonstrate how he is unable to conform his specific and detailed plans to the zoning requirements without peculiar and exceptional practical difficulties.
Neither plaintiff's application nor defendant's denial addresses these points sufficiently. Therefore, given our interpretation of the criteria for a C1 variance as it pertains to plaintiff's application in this case and the failure of both plaintiff and defendant to address the criteria, we reverse the order affirming the denial of the rear yard setback variance for the deck and remand the matter to the trial court so that it in turn can remand the application to defendant for further proceedings consistent with our interpretation of the C1 requirements. We affirm the trial court's order with respect to the denial of the C2 variance.
On remand to defendant, plaintiff is to submit to defendant within sixty days of our decision a current survey showing the dimensions of the existing deck and pool, as well as the effect of the bulk zoning ordinances on the existing deck and pool. Plaintiff is also to submit within that same timeframe any modifications to the existing improvements he wishes to make in order to attempt to conform his application for a deck and pool to the zoning ordinances. We do not imply in our remanding the matter as to how defendant should pass on the question of the variances. The purpose of our remand is so that both plaintiff and defendant can, in accordance with the appropriate criteria of C1, analyze plaintiff's application, as it currently stands and as it may be amended.
From our review of the record, we see no need to assume jurisdiction instead of remanding the matter. Defendant's questions as to the history of the matter do not *1218 evidence an inability on defendant's part to fairly and appropriately weigh the evidence.
Accordingly, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with the within opinion. We do not retain jurisdiction.
NOTES
[1] Judge Stern did not participate in oral argument. However, with the consent of counsel, he has joined in this opinion. R. 2:13-2(b).
[2] The variance concerning the dwelling not meeting the twelve foot combined side yard setback does not appear to be at all connected with the application to extend the rear yard deck and install a pool. It seems this condition existed prior to plaintiff's purchase of the dwelling in 1999.
[3] We find that while the situation as to setbacks may well constitute "an exceptional and undue hardship" on the plaintiff, because plaintiff or his predecessor in title created the "hardship," the "hardship" grounds for relief as opposed to the "peculiar and exceptional practical difficulties" grounds is not available. Jock v. Zoning Bd. of Adjustment of Tp. of Wall, 184 N.J. 562, 591, 878 A.2d 785 (2005); Dalton v. Ocean Tp. Zoning Bd. of Adjustment, 245 N.J.Super. 453, 464, 586 A.2d 262 (App. Div.1991), certif. denied, 126 N.J. 324, 598 A.2d 884 (1991).
[4] The combined twelve foot side yard setback variances for the dwelling does not directly relate to the construction of the deck and pool and there is not enough in the record to comment on how and why that variance could be granted or if it is required as there was some testimony the ordinance on this point may have been changed following the dwelling's construction.