**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1126-23

PAUL and NANCY VALENTINE,

    Plaintiffs-Respondents,

v.

THE CITY OF CAPE MAY ZONING
BOARD OF ADJUSTMENT,

    Defendant-Appellant.

_____

Argued September 24, 2024 – Decided October 29, 2024

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0104-23.

Richard M. King, Jr., argued the cause for appellant (King Barnes, LLC, attorneys; Richard M. King, Jr., and Marisa J. Hermanovich, on the briefs).

Andrew D. Catanese argued the cause for respondents (Monzo Catanese Delollis, PC, attorneys; Andrew D. Catanese and Kathryn Anne Monzo, on the brief).

PER CURIAM

The Cape May Zoning Board of Adjustment (the Board) appeals from an October 30, 2023 Law Division order and judgment reversing its denial of plaintiffs Paul and Nancy Valentine's variance application pursuant to N.J.S.A. 40:55D-70(c)(1) (the (c)(1) variance), N.J.S.A. 40:55D-70(c)(2) (the (c)(2) variance), and N.J.S.A. 40:55D-70(d) (the (d) variance), to install a swimming pool and other outdoor improvements on their one-family residential property. Based on our thorough review and application of prevailing law, we affirm substantially for the reasons set forth by the trial court in its comprehensive written decision.

I.

We discern the salient facts from the record before the Board. There were several preexisting nonconforming conditions on the property based on the rear and side yard setbacks, as well as total lot coverage (i.e. "impervious coverage"), which exceeded the existing requirements of Cape May's zoning ordinance, as promulgated in Cape May, N.J., Code § 525 (2004).

Plaintiffs submitted two successive applications to the Board. After the first application was denied, plaintiffs revised the plans and reapplied. In the second application, they sought (c)(1) and (c)(2) variances from the Cape May, N.J., Code § 525-15B and § 525-62A, related to the installation of a swimming

A-1126-23

pool, which is a permitted accessory use in the R-2 zone, and other outdoor improvements to: (1) decrease their preexisting non-conforming lot coverage from 52.2% to 45.8%—40% is required under the ordinance; and (2) to construct a swimming pool 4.7 feet from the principal structure—a 10-foot setback is required under the ordinance.

On December 15, 2022, the Board considered the application at a public hearing. Plaintiffs presented testimony from two experts: fire safety expert, Lewis Conley, and engineering and planning expert, Andrew Schaeffer. Conley opined the application presented no fire safety issues, which was consistent with the written opinion proffered by Cape May Fire Chief, Alexander Coulter.

Schaeffer addressed the (c)(1) variance, testifying that if the ten-foot setback under the ordinance adopted in 2009 was required when the home was built in 1980, the builders likely would have "left room by reconfiguring the house for a future pool." Schaeffer stated the 4.7-foot proposed setback covers the distance between the edge of the deck and the side of the swimming pool, while the distance between the swimming pool and plaintiffs' home is more than what is required under the ordinance. Schaeffer testified plaintiffs' current lot coverage is 52.2% and the application proposes to reduce the pre-

existing non-conformity to 45.8%, where the ordinance dictates the maximum allowable lot coverage in this particular zone for a property that was built after the passage of the ordinance is 40%.

Schaeffer opined that the benefits of the application far outweigh the detriments since granting the (c)(2) variance would advance the purposes of the ordinance through improving the property's drainage system, remedying water pooling on the neighbors' yards, and decreasing overall lot coverage. He testified that plaintiffs' proposed "other improvements" to the property, such as new landscaping, promote a desirable visual environment and could be granted without derailing the intent of the ordinance. Plaintiffs proffered photographs along with corroborating testimony from Schaeffer showing that the Board had granted similar variances for other properties previously.

The Board did not present any contradictory expert testimony. Board engineer Craig Hurless's testimony was in accord with Schaeffer's. Hurless opined plaintiffs' proposal to revise their existing drainage system would mitigate the negative impact of the pre-existing lot coverage deviation.

The Board opened the meeting to the public, where seven individuals testified. Certain neighbors anticipated noise from individuals enjoying the pool would affect their quality of life. One resident argued there is nothing

4

unique about the property warranting a variance and that granting the variance would improperly allow the improvement of an already non-conforming lot.

Paul Haviland, plaintiffs' neighbor, testified as follows that granting plaintiffs' application would be beneficial:

> In fact, when I talk about the water runoff, it runs into my yard. So, I have a lake in the back of my yard when the water runs off. If he's going to put that drain in there, that's going to deter the water in the other direction. I am all for it because that lake sits there and it takes days for that to go away. So, that will be a drastic improvement to the back of my yard and I know it's going to, you know, help everybody else that's behind there as well because standing water is not good for anybody.

Another individual testified in favor of plaintiffs' application, stating they did not anticipate the addition of a swimming pool would be disruptive.

The final member of the public to testify was co-plaintiff Paul Valentine. Valentine suggested the objectors' concerns surrounded the use of the pool, rather than its installation.

After closing arguments, the Board denied the application by a four to two vote, which was memorialized by resolution. The Board found "the decrease in lot coverage [does not] offset the intensification of the property with the introduction of a pool." In short, the Board gave the neighbors' testimony about "a pool [being] an intense accessory use" more weight than

5

the expert testimony, and appeared to disregard the professionals' unrebutted testimony.

On March 13, 2023, plaintiffs filed an action in lieu of prerogative writs challenging the Board's denial. After hearing the matter, the trial court reversed the Board, finding the denial was arbitrary, capricious, and unreasonable in an eighteen-page written decision. This appeal followed.

II.

Our review of the trial court's decision reversing the Board is de novo. 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015). When we review a trial court's decision "regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). A local board's decision should not be reversed unless its findings were arbitrary, capricious, and unreasonable. Ibid.

While a board is entitled to reject expert testimony, to avoid the allegation its decision was arbitrary, capricious, or unreasonable, "proof of an adverse effect on adjacent properties and the municipal land use plan . . .

generally will require qualified expert testimony. Bare allegations . . . will not suffice." Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 87 (2002) (quoting Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 336 (1998)). "[I]t is essential that the board's actions be grounded in evidence in the record." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 196-97 (App. Div. 2009) (citing Fallone Properties, 369 N.J. Super. at 562); see also New York SMSA v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 339-40 (App. Div. 2004) (concluding the board failed to introduce its own experts to contradict the applicants' experts).

## A.

After de novo review, we affirm the trial court order reversing the Board's denial.

To obtain a (c)(1) variance, the applicant must establish

> (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional

7

and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship . . . .

[N.J.S.A. 40:55D-70(c)(1).]

When we examine the record through the lens of our jurisprudence, we conclude plaintiffs have met their burden to show an extraordinary and unique situation that inhibits the extent to which the property can be used, warranting (c)(1) relief. Schaeffer's unrebutted testimony established the 2009 setback requirement imposes hardship on plaintiffs pursuant to the (c)(1) variance since the ordinance's current setback requirement did not exist when the home was built in 1980. See also Cape May, N.J., Code § 525-62A(2) (2004) (amended 2009) (stating all swimming pools shall be at least ten feet from any property line).

Plaintiffs' theory that pre-existing, non-conforming structures can constitute hardship is supported by Lang v. Zoning Bd. of Adjustment of Twp. of N. Caldwell, 160 N.J. 41 (1999). The Lang Court found the (c)(1) criteria was established where the applicants proved they experienced an "exceptional and undue hardship" due to the nature of the lot which stifled its use. Id. at 55-56. There, the Court agreed with the board, and found undue hardship

since the enforcement of the applicable ordinance "would severely limit and . . . preclude the installation of any reasonably sized . . . pool." Id. at 49. Application of the Lang principles here leads us to the same conclusion.

The record also supports the trial court's determination that plaintiffs are entitled to (c)(1) variance relief from the lot coverage requirements. The Kaufmann Court recognized "the existence of a nonconforming structure may justify a variance from maximum land-coverage requirements." Kaufmann v. Plan. Bd. for Warren, 110 N.J. 551, 562 (1988) (citing Davis Enterprises v. Karpf, 105 N.J. 476, 493 (1988) (Stein, J., concurring)). Plaintiffs' home was built before the adoption of the applicable maximum lot coverage requirements. The record establishes plaintiffs' proposed plan will reduce impervious lot coverage from 52.2% to 45.8% and advance the property closer to ordinance conformity. See Cape May, N.J., Code § 525-15B(2)(a) (2004) (stating in the R-2 zone, maximum lot coverage must not exceed 40%).

Here, the Board offered no contradictory expert testimony on any issue. Instead, the Board supported its denial based on alleged "over intensification" of the use of the property, a complaint testified to by the objectors, plaintiffs' neighbors. The Board also supported its denial by finding the 4.7-foot setback would not allow for "safety of the navigation in and around the pool." The

9

Board's position "that the combination of the inadequate distance between the pool and the deck, and the continued excess of lot coverage on the property disincline the Board to grant the variance . . . and allow a pool in this particular property" is not supported by any expert opinion.

We are unpersuaded by the Board's argument that the (c)(1) criteria is not met because of the alleged overall intensification in the use of the property. The Board maintains plaintiffs' Property is too overdeveloped for a pool and having a rear yard that is too small for the size pool one desires, is not a hardship under the (c)(1) standard. Although the Board argues undue hardship requires that no effective use can be made of the property in the event that the variance is denied, see, for example, Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 605 (1980), our courts have applied a more expansive view of the hardship requirements, finding the applicant must demonstrate the hardship "inhibit[s] the extent to which the property can be used." See Kaufmann, 110 N.J. at 562 (citing Davis Enterprises, 105 N.J. at 493).

## III.

A plaintiff is required to establish a "substantial benefit" to obtain a (c)(2) variance:

> [W]here in an application or appeal relating to a specific piece of property the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, [the board of adjustment shall have the power to] grant a variance to allow departure from regulations pursuant to article 8 of this act . . . .
>
> [N.J.S.A. 40:55D-70(c)(2).]

"A [(c)(2)] variance . . . must set forth what purposes of the [ordinance] will be advanced by granting the requested variance." Wilson, 405 N.J. Super. at 198; see also Kaufmann, 110 N.J. at 562 (explaining a grant of a (c)(2) variance "must be rooted in the purposes of zoning and planning itself and must advance the purposes of the [ordinance].").

Here, the record contains ample unrebutted expert opinion that plaintiffs' application advances statutory zoning purposes and benefits the community by decreasing the impervious lot coverage from 52.2% to 45.8%, thus reducing the percentage of non-conformity. See Chesterbrooke Ltd. P'ship v. Plan. Bd. of Twp. of Chester, 237 N.J. Super. 118, 130 (App. Div. 1989) (reasoning an applicant advances the purposes of the zoning plan when the applicant's proposed plans place the land closer in conformity with the ordinance). Additionally, the Board's own engineer testified the proposed drainage system would positively impact the neighboring properties. Although the Board

11

submits plaintiffs' lot coverage "could be reduced without intensifying the property overall," the (c)(2) standard does not require an applicant to eliminate the nonconformity to obtain a variance for a permitted use. The undisputed expert opinion in the record establishes granting the application will benefit the community, both visually and through reducing existing community drainage issues.

IV.

We also affirm the trial court's determination plaintiffs satisfied their burden to obtain a (d) variance.

In addition to meeting either the (c)(1) or (c)(2) requirements, "the negative criteria of N.J.S.A. 40:55-70(d) must also be met." Wilson, 405 N.J. Super. at 197. In pertinent part, N.J.S.A. 40:55D-70(d) states:

> No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [N.J.S.A. 40:55D-70(d).]

Evaluation of (c)(1) or (c)(2) variance applications focus "on the impact the variance will have on the specific adjacent properties affected by the permitted

12

deviations from the ordinance." Lang, 160 N.J. at 57. The impact should be measured by considering whether the "grant of the variance can be reconciled with the zoning restriction from which the applicant intends to deviate." Ibid.; see also Ten Stary Dom, 216 N.J. at 32 ("[C]are must be taken to direct the evaluation of a request for a . . . variance to those purposes of zoning that are actually implicated or triggered by the requested relief").

Schaeffer's unrebutted testimony was that the purpose of the ordinance is not to protect the neighborhood from potential noise associated with pool use—but rather to promote the aesthetics of the neighborhood and to ensure fire safety. See Cape May, N.J., Code § 525-2(B) (2004) (outlining the purposes of the provisions contained in Chapter 525, including to promote fire safety and a desirable visual environment). The Board focused on the increase in overall intensity of the property, including certain neighbors' quality of life concerns. Those considerations "[are] wholly irrelevant because pools are a permitted accessory use in the zone." See, e.g., Ten Stary Dom, 216 N.J. at n.2 (standing for the proposition that noise is an irrelevant consideration when requesting (c)(1) or (c)(2) variance relief).

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-1126-23

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1126-23