**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3827-23

WILL MARTIN and JUDY
MARTIN, Administrators of the
ESTATE OF WILLIAM MARTIN,

     Plaintiffs-Appellants,

v.

HOPEWELL TOWNSHIP LAND
USE BOARD and GENORA
ROSYPAL,

     Defendants-Respondents.

_____

        Argued March 17, 2026 – Decided April 14, 2026

        Before Judges Gilson, Firko, and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Law
        Division, Cumberland County, Docket No. L-0654-22.

        Francis J. Ballak, Jr., argued the cause for appellants
        (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi
        & Gill, attorneys; Francis J. Ballak, Jr., of counsel and
        on the briefs).

Raymond J. Went, Jr., argued the cause for respondent Genora Rosypal (Nehmad Davis & Goldstein, PC, attorneys; Raymond J. Went, Jr., on the brief).

Testa Heck Testa & White, PA, attorneys for respondent Hopewell Township Land Use Board (Justin R. White, on the statement in lieu of brief).

PER CURIAM

Plaintiffs Will Martin and Judy Martin[1] (plaintiffs), administrators of the estate of William Martin (decedent), appeal from the June 24, 2024 trial court order, which affirmed the Hopewell Township Land Use Board's (Board) granting of defendant Genora Rosypal's hardship variance application under N.J.S.A. 40:55D-70(c)(1) and dismissed their complaint in lieu of prerogative writs with prejudice. After reviewing the record, parties' arguments, and applicable law, we affirm.

## I.

Rosypal owned a home on River Road in Hopewell Township that she rented to tenants. The 3.606-acre property, Block 88, Lot 13.01, was located in the Agricultural Zoning District. In May 2021, an accidental fire in the home destroyed approximately seventy percent of Rosypal's two-story, single-family

---

[1] As parties and their referenced family members share the same surname, we use first names to avoid confusion. We intend no disrespect by this informality.

house.

After the fire, Rosypal filed a land use application for the Board's approval of a variance under N.J.S.A. 40:55D-70(c)(1) or (c)(2),[2] seeking a 44.4 feet front-yard setback where 100 feet was required. Rosypal also requested an agricultural buffer waiver under Hopewell Township Zoning Ordinance 220-40(d)(4), which required a landscaped buffer of 100 feet or more when lots "are adjacent to any shared lot line with an active agricultural use." Her proposed home was over fifty feet from plaintiffs' neighboring farmland. She proposed to build a single-family, one-story modular residence on the surviving foundation with an additional ten-foot extension for a crawl space. The new residence complied with "all of the [other] bulk standards of the Agricultural Zoning District."

On September 21, 2022, the Board held a public hearing on Rosypal's application. Over plaintiffs' objection, the Board found Rosypal's application was complete. Rosypal's application included: the property details; surveys and plans; five pre-fire photographs of the property taken on July 8, 2011; six post-fire photos of the property taken on August 11, 2022; relevant ordinances from

---

[2] During the application hearing, Rosypal's attorney clarified Rosypal was only pursuing a N.J.S.A. 40:55D-70(c)(1) variance.

2016 and 2022; the proposed single-story modular home's floor plan; and a structural inspection report addressing the foundation, prepared by Block Engineering, LLC.

Rosypal's expert, Remi N. Nassar, P.E., P.P., C.M.E., a licensed professional engineer and planner, testified that the existing foundation was not parallel to River Road because the front-yard setback was 44.4 feet from the left corner and 65 feet from the right corner. He explained a "horseshoe" driveway surrounded the foundation, and "mature" trees are "in the back of the property, which create a buffer." Nassar opined that "the tillable land" "should be about [seventy-five] feet from the existing house."

Based on his experiences in Cape May and Atlantic County, Nassar opined that "wherever you see the farms stop farming, that[ is] where the wetlands are." He testified the wetlands would be near the stream on "the northwest side of the property." Further, given the "50 to 150 f[eet] wetland buffers," Nassar estimated that only thirty-five percent to forty percent of the property was "usable." He had examined "flood hazard maps," and observed that "a large portion of the property . . . falls within the flood zone" limiting its use. Nassar testified the existing foundation would support the modular home.

On cross-examination, he acknowledged never visiting Rosypal's property

to examine the foundation but later clarified his opinion was based on experience with "homes . . . built . . . in the [19]60s" and the Block Engineering report that found within a "reasonable degree of engineering certainty . . . that the foundation walls of this house are in good structural condition." He asserted that it would be "expensive to rebuild a [new] foundation" and highlighted the old foundation would require removal.

Rosypal testified that the existing foundation had a full basement, but she needed to add ten feet of crawl space to the foundation to ensure the proposed one-story modular home remained a three-bedroom residence. She explained the property sale negotiations with plaintiffs failed. When cross-examined on whether she stated during the negotiations "that [she] could get two properties on [her] lot," Rosypal asserted the lot was wide enough. The Board later noted there was no application to subdivide the property, and any application would "have to [be] base[d] . . . on its own merits." Rosypal added that in addition to the financial reasons for building the modular home on the current foundation, she did not want to "disturb a beautiful area" or "cut any more trees than [she] ha[d] to."

Rosypal's professional planner, Stephen Hawk, P.P., A.I.C.P., testified that Rosypal's variance application was supported because the property had: a

A-3827-23

"shallowness [o]n th[e] easterly part of the lot"; "wetlands associated with it"; "a flood zone associated with it"; "roughly two-thirds . . . that[ was] not available for development"; and a "striking group of trees" that are "50 to 60 f[eet] high," including "90 to 100 of them in that half acre area." He further opined that "mov[ing] the house . . . would . . . disrupt[] some phenomenal trees" and "a lot of soil," and require "mov[ing] the driveway."

Hawk further explained that of the "[thirty-two] homes on River Road[,] [nineteen] . . . have setbacks of less than [sixty] feet" with "nine of them . . . [having] less than [forty-four] feet." After discussing the positive aspects, he addressed the negative criteria, opining that Rosypal's variance would result in "no substantial impairment of the zone plan and zoning ordinance." In his opinion, the other design and code standards would be substantially met, and based on the Master Plan's[3] "environmental conditions map," "about [seventy-five percent] of . . . [Rosypal's property] is either . . . a river or water feature, and then the other part of it is wooded." He expressed that concerns about plaintiffs' farm and Rosypal's proposed home coexisting with less than the required 100-foot buffer were negligible because the "20 f[eet] of benefit in

---

[3] "'Master plan' means a composite of one or more written or graphic proposals for the development of the municipality . . . ." N.J.S.A. 40:55D-5.

A-3827-23

getting away from the farm is not worth the amount of destruction that would take place to the wildlife habitat that the [M]aster [P]lan calls for and the stream corridor."  Therefore, Hawk testified that the variance was justified.

Plaintiffs' expert professional planner, Sarah Birdsall, P.P., A.I.C.P., testified that the Board's granting of the variance for a reduced setback would be "against the [M]aster [P]lan," which specifically sought to "get rid of . . . isolated small houses . . . in the agricultural area."  She conceded the property "is a[n] extraordinary, environmentally gorgeous area," the Township was trying to "preserve [the] area," "it is somewhat of a hardship, but it is somewhat of a self-inflicted one," and there was "a benefit" to "putting a much nicer house" on River Road.

Thomas Martin testified on plaintiffs' behalf.  He is decedent's brother and operates plaintiffs' farm on the adjacent property.  Based on his experience as a "licensed pesticide applicator," Thomas explained that the safety concerns surrounding a 100-foot agricultural buffer versus an approximately 70-foot buffer include the risks associated with the "operati[on of] heavy machinery" and "application of pesticides."  He believed the white pine trees on the property were not native to the land and questioned if they were "viable."  After observing the post-fire, preexisting foundation, he noted there was a "vertical crack in the

7

corner."

During cross-examination, Thomas admitted "consistently farm[ing]" despite the proximity of Rosypal's residence, and he acknowledged farming limitations because of the existing wetlands, which were "accessible by a boat at high tide," and the "knee-high water lines[,] in addition to streams."

Will testified that plaintiffs use "pesticides[ and] herbicides" that can "hang around for three or four days" and cautioned that he would not "want to be out in the field after it[ has been] sprayed." He maintained that Hopewell Township's required "setbacks" from "tillable ground" are for "health" reasons.

The Board's planner advised that Rosypal required a variance to rebuild a home, regardless of whether she requested to expand the foundation by ten feet, because the fire destroyed more than fifty percent of the preexisting house. During public comment before the Board, a neighbor testified in favor of the application. He believed Hopewell Township "need[ed] new housing stock in general" and that putting "a new house where an old house stands is beneficial to the community at large." He observed there was "not a lot of development . . . happen[ing] in" town.

Following the hearing, the Board voted in favor of granting Rosypal's variance application, permitting the front-yard setback variance and the

agricultural buffer waiver. Prior to the vote, a Board member who was also "a representative from the Environmental Commission" noted that "the existing location" of the foundation "is the least . . . detrimental to . . . the local habitat." During the Board's discussion, Board members also noted: it was better not to have "more waste being . . . created by tearing up what[ is] there"; there would "be . . . . less impact on the environment"; "environmental stress . . . would" occur if Rosypal "had to move [the residence] toward the west"; using the foundation site created "less impact"; and "moving the house . . . would be . . . a potential[ly] bigger detriment to the overall area."

The Board memorialized its decision in a comprehensive and detailed resolution dated October 19, 2022.[4] It made the following findings of fact and conclusions of law:

> (a) the proposed . . . home is a permitted use[;] (b) moving the principle structure would require a series of other improvements, including relocating the driveway . . . and would otherwise be a hardship for . . . [Rosypal;] (c) the site specific circumstances outweigh any possible detriment[;] (d) the increase of [ten] feet to the foundation to the west to accommodate a one-story home will result in less intensity . . . than the prior two-story home[;] (e) the proposed . . . home will be located where it is the least environmentally detrimental to the local habitat[;] (f) tearing up the

---

[4] N.J.S.A. 40:55D-10(g) requires municipal agencies to memorialize decisions in a resolution.

existing foundation would unnecessarily cause more waste and would be an environmental detriment[;] . . . (g) the easterly end of . . . [Rosypal's] property . . . is exceptionally shallow; (h) . . . the wooded areas . . . and wetlands areas . . . are not available for development[;] (i) the pre[]existing usable foundation also presents a unique feature or exceptional circumstance[;] (j) the [forty-four feet] front-yard setback . . . is quite typical for River Road in that, of the [thirty-two] homes on River Road, [nineteen] homes have front-yard setbacks of less than [sixty] feet and . . . [nine] of those homes have . . . less than [forty-four] feet . . . [;] (k) any detriment from the [forty-four feet] front-yard setback is slight and not substantial, the slight detriment is significantly outweighed by the hardship, and there will be no substantial harm or impairment to the Township's Zoning Code or Master Plan[;] (l) . . . [Rosypal's] property meets every [c]ode and [d]esign [s]tandard except the front-yard setback and design standard landscape buffer for neighboring agricultural uses; (m) . . . [Rosypal's] property otherwise greatly exceeds the requirements for side-yard setbacks, rear-yard setbacks and overall lot area[;] (n) the landscape buffer design standard also expressly provides the Board with the authority to waive that design standard[,] and it would be reasonable here to grant a waiver . . . [; and] (o) the existing foundation is located at the "high point" . . . of the . . . property, which further supports keeping the existing location of the principal foundation and structure.

On November 14, 2022, plaintiffs filed a complaint in lieu of prerogative writs seeking reversal of the Board's resolution granting Rosypal's variance and agricultural buffer waiver. On January 19, 2023, Hopewell Township issued Rosypal a zoning permit to construct the home in a revised location on the

10

property, which required no variances.[5]

After a hearing on June 24, 2024, the judge issued an order accompanied by an oral decision affirming the Board's resolution and dismissing plaintiffs' complaint with prejudice. The judge found the Board made "a sound determination" based on "information in the record" and granting the variance was not "arbitrary, capricious, [or] unreasonable."

On appeal, plaintiffs contend reversal is warranted because Rosypal's application was fundamentally flawed for various reasons that render the Board's granting of the variance arbitrary, capricious, or unreasonable.

II.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "[A] court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Berardo v. City of Jersey City, 476 N.J. Super. 341, 353 (App.

---

[5] Rosypal maintains that while she obtained a permit to relocate the dwelling, undertaking such a relocation imposes a greater burden.

Div. 2023) (alteration in original) (quoting Price v. Himeji, LLC, 214 N.J. 263, 284 (2013)). "We give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462. "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact . . . are not supported by the record." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013).

"[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Simeone v. Zoning Bd. of Adjustment of E. Hanover, 377 N.J. Super. 417, 426 (App. Div. 2005) (quoting Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999)). "[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005). Therefore, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid. Determinations on questions of law in land use matters are reviewed de novo. Bubis v. Kassin, 184 N.J. 612, 627 (2005).

N.J.S.A. 40:55D-70(c) of the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -171, "authorizes the grant of bulk or dimensional variances," otherwise known as "non-use variances." Lang, 160 N.J. at 52. N.J.S.A. 40:55D-70(c)(1) states, in relevant part, that a board has the power to grant variances:

> Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation . . . would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship.

"Undue hardship refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise." Jock, 184 N.J. at 590.

After an applicant has established "proof of the 'positive criteria,' the [(c)(1)] variance also requires proof of what is referred to as the 'negative criteria,' also found in N.J.S.A. 40:55D-70(c)." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 200 (App. Div. 2009). "[A]n applicant must demonstrate 'that such variance or other relief can be granted without

13

substantial detriment to the public good and will not substantially impair the intent and purpose of the zoning plan and zoning ordinance.'" Ibid. (quoting N.J.S.A. 40:55D-70).

III.

Plaintiffs contend the Board's granting Rosypal a N.J.S.A. 40:55D-70(c)(1) variance was arbitrary, capricious, or unreasonable because there was no competent hardship evidence. Plaintiffs specifically challenge the Board's determinations that: the westerly portion of the property was undevelopable; the preexisting foundation's location at the property's high point was a relevant consideration; the parties' prior purchase negotiations were irrelevant; a minor financial inconvenience to Rosypal qualified as an exceptional and undue hardship; and the preexisting foundation constituted a unique feature, supporting a N.J.S.A. 40:55D-70(c)(1) variance under Hawrylo.[6] After a review of the record, we are unpersuaded.

The Board's granting of the variance was substantially based on its findings regarding the property's wetlands and trees. A review of the resolution and record demonstrates the Board's findings are amply supported based on

---

[6] Hawrylo v. Harding Twp. Bd. of Adjustment, 249 N.J. Super. 568 (App. Div. 1991).

14

Rosypal's experts' testimony, the submitted survey and plans, and Thomas's testimony. It was undisputed at the hearing that a stream is in the vicinity of Rosypal's property, and Rosypal's and plaintiffs' properties contain wetlands. Hawk testified that he examined flood hazard maps in reviewing Rosypal's application. He also personally visited Rosypal's property and observed approximately 100 trees in a densely wooded area. Hawk testified that requiring Rosypal to build a house elsewhere on the property presented a hardship partially based on the wetlands' limitations and the necessary, significant tree clearing in the wooded area. The Board's resolution highlights its consideration of Hawk's testimony that the wetland and tree area made "the western area of . . . [Rosypal's] property . . . not available for development," and the application promotes "the Master Plan's land use goals" of preserving wooded areas.

Plaintiffs conflate Hawk's testimony that "roughly two-thirds of [the property] . . . is not available for development" to mean he testified that the area west of the foundation was wholly undevelopable. Hawk testified that an area "130 to 150 feet west of the house . . . . was [previously] farmed, . . . the house was built in 1963, . . . [and] a very large grove of white pines . . . is" in the area. He opined that it was "illogical to . . . take out . . . trees . . . to meet the front setback," remove "[fifty] to [sixty] [feet of] . . . high white pines," and "move

15

the house over" to meet the setback requirement because the "[twenty] f[eet] of benefit in getting away from the farm is not worth the amount of destruction that would take place to the wildlife habitat that the [M]aster [P]lan calls for and the stream corridor." We conclude the record amply supports the Board's resolution finding that Rosypal's proposed home would be in "the least environmentally detrimental [location] to the local habitat."

We next address plaintiffs' related arguments regarding the preexisting foundation. Plaintiffs posit that the Board incorrectly granted the N.J.S.A. 40:55D-70(c)(1) variance based on the foundation's location at the property's high point and the "unique feature" of the usable preexisting foundation. Plaintiffs' arguments are misplaced because each of the Board's findings should not be viewed in isolation. The Board not only found that "the existing foundation is located at the 'high point,'" but it also found relevant "the topographical conditions of the property" and that the "easterly end of the . . . property is exceptionally shallow." The Board's determinations must be viewed in the context of its findings that wetlands and trees exist on the property. The Board's comprehensive review and multiple related findings support its determination that Rosypal demonstrated an "exceptional situation uniquely

16

affecting a specific piece of property or the structures existing thereon." N.J.S.A. 40:55D-70(c)(1)(c).

We also reject plaintiffs' argument that the Board erred in considering that Rosypal could rebuild her house on the existing foundation. We have found a board's granting of a N.J.S.A. 40:55D-70(c)(1) variance may be based on a "lawfully existing structure on a specific piece of property." Wilson, 405 N.J. Super. at 200. Further, in granting a variance, a board may consider an applicant's use of an existing foundation and the resulting "environmental benefits in conserving existing resources." Hawrylo, 249 N.J. Super. at 584. The Board's finding that "the pre[]existing usable foundation also presents a unique feature or exceptional circumstance" was reasonable.

Plaintiffs' additional contentions that the Board based its decision on Rosypal's financial inconvenience and erred in not permitting further testimony regarding plaintiffs' failed attempt to purchase Rosypal's property are also without merit. The Board's resolution demonstrates it granted the variance based on the property's specific uniqueness, including the preexisting foundation, and not solely Rosypal's financial inconvenience. The Board's decision to limit the testimony regarding the specific settlement amounts

17

discussed for the property during the parties' negotiations was not an abuse of discretion. N.J.S.A. 40:55D-10(d).

Plaintiffs have not demonstrated the Board's action of granting the N.J.S.A. 40:55D-70(c)(1) variance was arbitrary, capricious, or unreasonable. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 558 (2018). The Board granted the variance based on its evaluation of Rosypal's application in light of the confluence of distinct factors she successfully presented, and its resolution delineated fifteen different reasons. When viewed together, these factors support the Board's finding "that the applicant established a hardship," which outweighed any "[slight] detriment in granting the variance." The Board's resolution illustrates it considered the parties' presented evidence and determined that Nassar's and Hawk's testimony was more persuasive and credible than Birdsall's. A board is entitled to decide questions of credibility and can accept or reject testimony, expert or otherwise. TSI E. Brunswick, LLC v. Zoning Bd. of Adjustment of E. Brunswick, 215 N.J. 26, 46 (2013). Therefore, as the judge appropriately determined, its decision should not be disturbed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3827-23